OPINION OF THE COURT
William R. Geiler, J.
Defendant in this divorce action governed by the Equitable Distribution Law moves for an order determining that plaintiff’s teaching license is marital property subject to equitable *226 distribution, and that the pension of both parties should be valued as of the date of the earliest retirement as provided by their respective plans.
BACKGROUND
The parties herein were married on August 17, 1963. Both are 47 years of age while their two sons are both emancipated. It furthers appears that plaintiff received a Bachelor of Social Sciences from LeMoyne College in 1961. Thereafter, and from June 1961 until August 1963, the very month that the parties were married, plaintiff obtained the necessary 30 hours of graduate work to enable her to obtain her permanent certification as a teacher of kindergarten and common branch subjects from the State Education Department of the University of the State of New York, which certification was effective on September 1, 1963. Plaintiff, in 1977, received a Masters Degree in Science in Reading, since it would mean a salary differential to her and it did result in a somewhat higher salary. Plaintiff is employed as a teacher with the Cold Spring Harbor School District, Cold Spring Harbor, New York, earning an annual salary of approximately $48,000, while defendant is employed by the United States Postal Service in a branch office in Connecticut earning an annual salary of $26,000.
teacher’s certification as a marital asset
The court holds that a teacher’s certification, acquired during marriage is a marital asset. In what has been characterized as a modern approach to compensation for spousal contributions to professional education (see, Comment, Professional Licenses and Marital Dissolution in O’Brien v. O’Brien: Expectation Returns in the Marital Partnership, 72 Iowa L Rev, at 445, 446 [1987]), the New York State Court of Appeals in O’Brien v O’Brien (66 NY2d 576 [1985]) applied Domestic Relations Law § 236 (B) and determined that a medical license itself, gained in part through the sacrifices and support of the holder’s spouse, constituted marital property subject to equitable distribution in divorce actions. Of great significance therein was the court’s valuation of the wife’s interest as a percentage of the present value of her husband’s professional training, resembling an investment return (supra, at 588-589). The New York decision ran counter to the clear prevailing view held in other jurisdictions and was based upon a statute *227 in which the court found a clear mandate by the Legislature to include an interest in a profession or professional career as marital property (supra, at 588-589). Since the landmark decision in O’Brien, four other jurisdictions have ruled to the contrary on the issue of whether a degree or license is a marital asset (Hodge v Hodge, — Pa —, 520 A2d 15 [1986] [medical license is not marital property; doctor’s increased future earning capacity is also ruled out for purposes of equitable distribution]; Drapek v Drapek, 399 Mass 240, 503 NE2d 946 [1987] [spouse’s professional degree and enhanced earning capacity, acquired during marriage, are not marital assets]; Geer v Geer, — NC App —, 353 SE2d 427 [1987] [while professional license is separate property, contribution to spouse’s career is compensable]; Petersen v Petersen, — Utah App —, 737 P2d 237 [1987] [medical degree not a marital asset; compensatory alimony award may be proper]). The Petersen and Drapek opinions note that the New York Court of Appeals distinguished its analysis from that of other jurisdictions that have found a license or advanced degree not to be marital property by creating a new species of property previously unknown at common law or under prior statutes, and by recognizing that critical portions of the New York Equitable Distribution Law provide that in making property division, the court shall consider the efforts one spouse made to the other spouse’s career or career potential and the difficulty of evaluating an interest in a profession (Domestic Relations Law § 236 [B] [5] [d] [6]; [e]). The function of equitable distribution is to recognize that when a marriage ends, each of the spouses, based on the totality of the contributions made to it, has a stake in and right to a share of the marital assets accumulated while it endured, not because that share is needed, but because those assets represent the capital product of what was essentially a partnership entity (Wood v Wood, 119 Misc 2d 1076 [Sup Ct, Suffolk County 1983]). As we are told in O’Brien (66 NY2d, supra, at 588), that a professional license has no market value is irrelevant. Its value is the enhanced earning capacity it affords the holder.
Given the holding that the emphasis to be placed is whether one spouse made sacrifices and contributions to the other spouse’s attainment of enhanced earning capacity, the question becomes whether O’Brien (supra) is to be limited to professional licenses? The court answers this question in the negative.
To license means to confer on a person the right to do *228 something which otherwise he would not have the right to do. It confers only a personal privilege to be exercised under restrictions existing at the time of the issuance of the license and such as may thereafter be reasonably imposed (12 NY Jur 2d, Business and Occupations, § 1). More than 35 State agencies issue permits affecting business (ibid.). For example, under the General Business Law, licenses are required of collateral loan brokers (General Business Law § 40), junk dealers (General Business Law § 60), private investigators (General Business Law § 70), transportation ticket agents (General Business Law § 150), employment agents (General Business Law § 172), aviation pilots (General Business Law § 241), hairdressers and cosmetologists (General Business Law § 402), barbers (General Business Law § 432), and crane operators and blasters (General Business Law § 482). The Environmental Conservation Law requires a license to practice taxidermy (ECL 11-1733). The Real Property Law requires licenses for real estate brokers and salesmen (Real Property Law § 440-a). The Education Law articles 130 through 159 and the sections therein contain licensing requirements and regulations for certain occupations entitled "The Professions” (Education Law tit VIII). Conspicuous by its absence therefrom is the legal profession, as well as teaching. This list is certainly not all inclusive. Could it rationally be concluded that, for purposes of equitable distribution upon divorce, the Court of Appeals intended to limit as marital property, licenses enumerated in the Education Law? Hardly, given the definition of a license’s value as enunciated in O’Brien (supra), as being enhanced earning capacity. Accordingly, the court holds that a teacher’s certification is a marital asset subject to equitable distribution.
Having answered the academic question, the court cautions the parties that it does not answer such questions as to its valuation, whether defendant made any contributions to its acquisition, and whether the license has merged in a profession or career position with a school district (Vanasco v Vanasco, 132 Misc 2d 227 [Sup Ct, Nassau County 1986]). These issues will be taken up at trial.
EDUCATIONAL DEGREE AS A MARITAL ASSET
It further appears that plaintiff obtained a Masters Degree in Science in Reading from C.W. Post College at Greenvale, New York, in 1977, during the marriage. Given the O’Brien *229 criteria, the court holds that this too is a marital asset subject to equitable distribution.
In Conner v Conner (97 AD2d 88, 89 [2d Dept 1983]), the court concluded "that an academic degree is not property susceptible of distribution pursuant to part B of section 236 of the Domestic Relations Law”. In Conner, the husband held a Masters of Business Administration Degree from Harvard University. The court noted that "we may not indulge in the fiction that an academic degree can be evaluated as reified marital property”. (97 AD2d, supra, at 102.) The court in Conner had relied in part upon the Fourth Department’s decision in Lesman v Lesman (88 AD2d 153 [4th Dept 1982], appeal dismissed 57 NY2d 956 [1982]), which had also held that an advanced degree was not marital property. This decision was followed in Cronin v Cronin (131 Misc 2d 879 [Sup Ct, Nassau County 1986]). It should be noted, however, that the Connor decision was rendered prior to the decision in O’Brien (supra).
In O’Brien (supra), the Court of Appeals did not address the question of whether a degree, as distinguished from a license, could constitute marital property. Leading commentators, however, have opined that the same logic applied to licenses by the Court of Appeals in O’Brien seems to apply to degrees (see, Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:6, at 202-205). For example in Connor (supra), the lead opinion asserted that the degree itself was not divisible and that the nondegreed spouse was really seeking a percentage of the income that the degreed spouse would earn for the rest of his life by exercising the privileges conferred by the degree. These arguments seem very close to those raised unsuccessfully by the licensed spouse in O’Brien (supra). The essential difference between the license and the degree is that the degree does not constitute authority to engage in any particular trade or profession. The degree merely represents a certification by an educational institution that the holder has successfully completed a given course of study. Nevertheless, at least certain degrees may, as a practical matter, enhance the earning capacity of the holder. Was not Mr. Connor’s earning capacity enhanced by his attainment of a Masters Degree in Business Administration from such an outstanding and prestigious center of learning as Harvard University? Maybe even more so than if he received a license to practice a particular trade or profession.
*230 Again, Domestic Relations Law § 236 (B) (5) (d) provides that in making an equitable distribution of marital property, "the court shall consider: * * * (6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party” (emphasis supplied). The Legislature has decided, by its explicit reference in the statute to the contributions of one spouse to the other’s profession or career (see, Domestic Relations Law § 236 [B] [5] [d] [6], [9]), that these contributions represent investments in the economic partnership of the marriage and that the product of the parties’ joint efforts, the academic degree, should be considered marital property.
As with the teacher’s certification, having held that an academic degree is marital property, the court has not answered any questions as to valuation, contributions to the acquisition of the degree, and whether its value has been extinguished or diminished by a merger in a better paying position in a school district or elsewhere.
pension: date of retirement
Pursuant to Domestic Relations Law § 236 (B) (4), defendant moves for an order declaring that the pension benefits of both parties should be valued as of the date of the earliest retirement as provided for by their respective plans. Domestic Relations Law § 236 (B) (4) (b), as amended by Laws of 1986 (ch 884, eff Sept. 1, 1986), provides: "As soon as practicable after a matrimonial action has been commenced, the court shall set the date or dates the parties shall use for the valuation of each asset. The valuation date or dates may be anytime from the date of the commencement of the action to the date of trial.”
The law in New York is well settled that vested or indefeasible rights in a pension plan, whether the plan is contributory or not, are marital property, to the extent that the rights result from employment time after the marriage and to the date of the commencement of a dissolution action, even though the rights are unmatured at the time the action is begun. The matrimonial court, in the exercise of the discretion vested in it by Domestic Relations Law § 236 (B) may order distribution to one spouse of an equitable portion of that *231 part of the present value of the other spouse’s pension rights earned during marriage, or may provide that upon maturity of the pension rights, the recipient pay a portion of each payment received to his or her former spouse, or may, if it determines that valuation or other problems make equitable distribution impracticable or burdensome, order a distributive award in lieu of equitable distribution (Majauskas v Majauskas, 61 NY2d 481 [1984]). Whether the plan is contributory or noncontributory, the employee receives a lesser present compensation plus the contractual right to the future benefits payable under the pension plan. The value of those contractual rights will vary depending upon the number of years and months employed. To the extent that they result from employment time after marriage and before the commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.
It is the valuation of such assets that causes significant problems for the courts and the litigants. The law in New York seems well settled that pension and/or retirement benefits are valued as of the time of the commencement of the divorce action (see, Wegman v Wegman, 123 AD2d 220 [2d Dept 1986]), i.e., the present value of the pension and of the percentage of that value attributable to the period between the date of the marriage and the commencement of the dissolution action (Del Vecchio v Del Vecchio, 131 AD2d 536).
However, leading experts in the pension evaluation field counsel us that deferred distribution evaluations should not be expressed in present value terms, especially when the time the plan enters pay status is fully at the discretion of the employee spouse (Troyan, Pension Evaluation and Equitable Distribution, 10 Fam L Rptr 3001, 3007 [1983]). There are simply too many variables projected into the future for this calculation to have any merit (ibid.). Troyan further notes that the following generalization should be recognized: (1) The longer the plan participation of the employee spouse, the larger the benefit. (2) The longer the postdivorce plan participation of the employee spouse, the smaller the coverture fraction (determined by multiplying the benefit by a fraction, the numerator of which is the total period of time the employee spouse was a participant in the plan while married, and the denominator of which is the total period of time the *232 employee spouse participated in the benefits program) (Majauskas v Majauskas, supra; Hebron v Hebron, 116 Misc 2d 803 [Sup Ct, Queens County 1982]; Martinez v Martinez, NYLJ, Oct. 13, 1981, at 17, col 5 [Sup Ct, Nassau County, Oppido, J.]). (3) The nonemployee spouse will receive a decreasing percentage of an increasing benefit (Troyan, op. cit.).
Many pension and/or retirement plans provide for various payouts depending on whether one elects retirement at an earliest possible retirement date, early retirement date, normal retirement age, or at an age subsequent to normal retirement age. It may well be that the pension benefits of one or both parties will have to be calculated based on an assumption of a projected date of retirement. However, such projection cannot possibly be accomplished at this point without evidence, or at least an agreed state of facts, of such things as:
(1) The respective age of the parties;
(2) The respective health of the parties;
(3) The presence or absence of minor children;
(4) Employment opportunities elsewhere;
(5) The present and future financial circumstances of each;
(6) Mental disposition toward continued working at a later age;
(7) Probability of an offer of added pension benefits as an incentive to early retirement;
(8) Future intent of each; and
(9) Statistics as to what age people employed in the same job, occupation or profession normally retire.
Accordingly, despite the well-meaning intentions behind the enactment of the aforementioned amendments to Domestic Relations Law § 236 (B) (4), the issue as to what projected date of retirement will be used to calculate each party’s pension and/or retirement benefits is referred to the trial court for determination.