*441 OPINION OF THE COURT
Jacqueline W. Silbermann, J.
This matrimonial action was commenced by service of a summons in June 1986. After a timely appearance by defendant, a verified complaint was served on or about August 29, 1986. Issue was thereafter joined on November 4, 1986. A sufficient showing having been made at trial that the marriage which had been dying in 1984 was moribund as of 1985, a dual divorce on the grounds of constructive abandonment and abandonment was granted and the trial proceeded as to the ancillary relief.
After listening to the many days of testimony, observing the witnesses’ demeanor and manner of testifying and studying the many exhibits offered in evidence, the court makes the following findings.
STATEMENTS OF FACTS
The parties were married amidst a great deal of fanfare including television coverage on February 14, 1982. Although there are no children of this marriage, plaintiff has a daughter, Starlite, by a former marriage.
Plaintiff, Marisa Berenson, is a renowned and celebrated film and television actress and model. At the time of the marriage she apparently enjoyed enormous entree to the world of arts and fashion both in her own right and as the granddaughter of Elsa Schiaparelli, the celebrated couturiere.
At the time of the marriage, defendant A. Richard Golub was a successful attorney who had been in private practice for many years and who attracted media and celebrity attention. Indeed, at the time immediately preceding their marriage, defendant was engaged in the trial of a matter involving Brooke Shields which was getting a substantial amount of media coverage.
It is clear that both parties coveted and gained the attention of the press and the company of the "Rich and Famous”.
After living at several different locations during the first few months of their marriage, in the fall of 1982, the parties purchased a four-story townhouse at 209 East 83rd Street. This house was found by defendant and purchased for $575,000. The purchase was accomplished by the parties’ assumption of a then existing small mortgage, and a contribution by plaintiff of $58,000 and defendant of $75,065.61.
On February 1, 1984 the 83rd Street property was sold for *442 $950,000. Defendant had acquired the contract to purchase the townhouse at 42 East 64th Street for $50,000 and paid an additional $55,787.65 for a total cash payment of $105,787.65. Because the purchase of East 64th Street preceded the sale of 83rd Street property by six days, the remainder of the purchase price was covered by a purchase-money mortgage of $675,000 and a bridge loan of $250,000.
An examination of the various checks introduced into evidence as well as the testimony of the parties reveals the fact that the parties in effect pooled their income and defrayed their expenses using a flexible and/or pragmatic approach.
Plaintiff’s funds, including income from films, television, modeling and a book, were placed mainly in two accounts. (Plaintiff had a separate Paris account as well.) One was called "A. Richard Golub Special Account No. 2” and the second "Echoes of Eternity”. Defendant had signatory powers on both these accounts. Throughout the marriage it is evident that defendant made many of the decisions concerning the management of plaintiff’s financial matters and how their moneys would be spent. Thus, their moneys were used interchangeably to pay their various expenses including expenses for the East 83rd Street house, the East 64th Street house, taxes and general living costs.
Beginning at the start of the marriage and continuing thereafter, plaintiff spent almost half of every year in Europe. In September 1985, plaintiff found an apartment in Paris which she leased in her name. Defendant contributed $32,500 toward obtaining the Paris apartment. Plaintiff has had exclusive use of the Paris apartment.
Throughout the marriage plaintiff appeared to have been engaged in pursuing her career both in the United States and abroad, concededly successfully. While in New York, the parties ate frequently in restaurants and seemingly entertained little at home. Housekeeping and child care were tended to by hired help. These homemaking services were solely supervised by the defendant for approximately half of every year while plaintiff was in Europe. Likewise, defendant supervised the renovations made to the marital real estate as well as the negotiations and litigation necessary to vacate the rental apartments that were contained therein.
CONCLUSIONS OF LAW

Maintenance

In deciding plaintiff’s request for maintenance, the court *443 considered the statutory standards embodied in section 236 (B) (6) of the Domestic Relations Law.
The court notes that this is a short childless marriage in which both parties are in excellent health. Plaintiff has been a model since she was a teen-ager, appearing on the covers of such magazines as Vogue, Bazaar, Time and People. She is also a successful film and television actress. She works in this country as well as abroad, since she speaks several foreign languages. Plaintiff also wrote a book on fashion titled "Dressing Up” which was published by G.P. Putnam & Sons. Her talent and beauty have enabled plaintiff to become a substantial wage earner.
During the course of the marriage due in part to defendant’s assistance by dint of his legal skills and business acumen plaintiff’s earnings have appreciated. In this connection, defendant assisted plaintiff, inter alia, by getting her personal financial affairs in order at the inception of the marriage and making efforts throughout the marriage to advance her career. Indeed, plaintiff’s income has significantly increased during the marriage to a point where she earned in excess of $150,000 in 1987.
Plaintiff is clearly able to maintain out of her own resources, as well as the equitable distribution to be awarded herein, the standard of living she has enjoyed during the marriage to defendant. Thus, an award of maintenance is inappropriate and none is awarded.

Marital Property and Separate Property

Marital property is defined in section 236 (B) (1) (c) as "all property acquired by either or both spouses during the marriage”. (See also, Price v Price, 69 NY2d 8 [1986].) That is, the assets that represent the capital product of what was essentially a partnership entity. (Wood v Wood, 119 Misc 2d 1076 [Sup Ct, Suffolk County 1983].)
The court finds the following items to be marital property: the marital residence at East 64th Street; the increase in value of defendant’s practice; the increase in value in plaintiff’s career; the furnishings in the marital residence; the furnishings in the Paris apartment; and the dollar sign painting by Andy Warhol.

Equitable Distribution

In deciding the issue of the equitable distribution of the *444 marital property the court has duly considered the factors enumerated in Domestic Relations Law § 236 (B) (5) (d) and being cognizant that "[t]he function of equitable distribution is to recognize that when a marriage ends, each of the spouses, based on the totality of the contributions made to it, has a stake in and right to a share of the marital assets accumulated while it endured” (McGowan v McGowan, 136 Misc 2d 225, 227 [Sup Ct, Suffolk County 1987] [emphasis supplied]).

Increase in Value of Acting and Modeling Career

Defendant contends that the increase in value of plaintiff’s acting and modeling career is marital property and he seeks equitable distribution thereof as a result of his contributions thereto. The law of this State is clear that any increase in the value of separate property of a spouse occurring during the marriage which is due in part to the direct or indirect contributions of the other spouse may be considered property. (Price v Price, 69 NY2d 8 [1986], supra.) Further, the law is clear that professional licenses are included in the definition of property (O’Brien v O’Brien, 66 NY2d 576) and that this definition has been extended to include academic degrees as well as professional licenses (McGowan v McGowan, 136 Misc 2d 225 [Sup Ct, Suffolk County 1987], supra).
Plaintiff, citing Morimando v Morimando (NYLJ, Feb. 6, 1987, at 16, col 1 [Sup Ct, Nassau County]), contends that her celebrity status is neither "professional” nor a "license” and hence not an "investment in human capital subject to equitable distribution.” Moreover, plaintiff argues that because a career in show business is subject to substantial fluctuation, it should not be considered.
In O’Brien (supra), the fact that the professional license itself had no market value was irrelevant. It is the enhanced earning capacity that the license affords the holder that is of value. In this respect, all sources of enhanced earning capacity become indistinguishable. "Could it rationally be concluded that, for purposes of equitable distribution upon divorce, the Court of Appeals intended to limit as marital property, licenses enumerated in the Education Law? Hardly, given the definition of a license’s value as enunciated in O’Brien as being enhanced earning capacity.” (McGowan v McGowan, 136 Misc 2d 225, 228, supra.)
McGowan (supra) gives "enhanced earning capacity” an expansive meaning. The same logic used in McGowan to extend marital property to include degrees can be applied to *445 include as marital property a spouse’s unique ability to commercially exploit his or her fame. In O’Brien (66 NY2d 576, supra), it was the privileges conferred by the license that were critical to the court’s decision, not the piece of paper itself. In McGowan, it was not the spouse’s degree that was divisible; it was the income generated by exercising the privileges associated with the degree that the nondegreed spouse was seeking to share.
In O’Brien (supra), the court appears to be speaking of an intangible asset, i.e., "enhanced earning capacity” and not a tangible asset or "res”. (See, Morimando v Morimando, supra.)
In fairness, just as McGowan (supra) was a logical extension of O’Brien (supra), the right of a spouse to share in other valuable assets must be the next step forward.
There is tremendous potential for financial gain from the commercial exploitation of famous personalities (25 UCLA L Rev 1095). There is a proprietary interest in the product of a celebrity’s labors. The right to exploit a celebrity’s fame has been held to descend to his heirs (Price v Roach Studios, 400 F Supp 836). This exemplifies the property nature of a celebrity’s fame. A commercial endorsement is essentially a "license” to use a person’s fame. "Recognition of the community’s interest in certain of these intangible interests indicates a disposition on the part of the judiciary to re-evaluate old notions of property. In light of this, consideration of the community property issues posed by the right of publicity seems overdue” (25 UCLA L Rev 1095, 1113).
There is an analogy to be made between the right of publicity and professional goodwill. In both rights, there is a secondary meaning generated by a name and benefits derived therefrom. In either case, the right becomes an income-producing source.
The courts should treat all matrimonial litigants equally and should not prejudice nor penalize a spouse who is married to a nonprofessional who may nevertheless become an exceptional wage earner. The O’Brien remedy should be applied evenhandedly to all spouses. (Samuelson, The Valuation of Non-Tangible Assets of Non-Professionals, 19 [No. 2] Fam L Rev 1 [NY St B Assn, June 1987].) Otherwise, what will result is an economic windfall to some and an unfair deprivation to others. Clearly, there are certain fields in which the earning capacity exceeds that of other fields which require licensure. When a person’s expertise in a field has allowed him or her to *446 be an exceptional wage earner, this generates a value similar to that of the goodwill of a business.
In Morimando (supra), the spouse of a physician’s assistant sought to have that spouse’s license declared marital property for equitable distribution purposes upon divorce. The court distinguished this case from O’Brien (66 NY2d 576, supra) because a physician’s assistant does not share the same level of opportunity as does an M.D. A physician’s assistant was said to always rely on an employer. The court also referred to the statute applicable to physician’s assistants and noted that it "clearly imposes limitations upon the exercise of their functions.” The physician’s assistant is "destined to remain an employee.” Unlike a physician’s assistant, an actress/model often functions independently, on a free-lance basis and is not at the mercy of his or her employer.
O’Brien (supra) is the law. If it is to remain as good law, the rule should be uniformly applied. There seems to be no rational basis upon which to distinguish between a degree, a license, or any other special skill that generates substantial income. In determining the value of marital property, all such income-generating assets should be considered if they accumulated while the marriage endured. If one spouse has sacrificed and assisted the other in an effort to increase that other spouse’s earning capacity, it should make no difference what shape or form that asset takes so long as it in fact results in an increased earning capacity. The rationale in both O’Brien and McGowan (supra) for awarding the spouse an economic interest in the intangible asset seems to have been based on a view of the asset as "investments in the economic partnership of the marriage and * * * the product of the parties’ joint efforts”. (McGowan v McGowan, supra, at 230.)
The noncelebrity spouse should be entitled to a share of the celebrity spouse’s fame, limited, of course, by the degree to which that fame is attributable to the noncelebrity spouse (25 UCLA L Rev 1095). The source of the fame must still be traced to the marital efforts.
Thus, as in O’Brien (supra), if a spouse devotes himself or herself to the family throughout the marriage, giving up career opportunities, and no liquid assets exist, the court should compensate this spouse for his or her contribution enabling him or her to pursue his or her career and not just a terminable maintenance award. For example, if instead of medical school the spouse went to music school and became a *447 celebrated pianist, in equity both accomplishments must be treated equally.
The question, therefore, presented is should O’Brien (supra) be extended so as not to prejudice a spouse who is married to a nonprofessional?
This court answers the question in the affirmative and holds that the skills of an artisan, actor, professional athlete or any person whose expertise in his or her career has enabled him or her to become an exceptional wage earner should be valued as marital property subject to equitable distribution. Thus, although plaintiffs celebrity status is neither "professional” nor a "license” (Morimando v Morimando, NYLJ, Feb. 6, 1987, at 16, col 1, supra) its increase in value is marital property, despite the difficulties presented in valuing such property.
[Portions of opinion omitted for purposes of publication.]