232 N.J. Super. 559 (1989)
557 A.2d 1040
JOSEPH PISCOPO, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
NANCY PISCOPO, DEFENDANT-RESPONDENT, CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 1989.
Decided May 1, 1989.
*560 Before Judges KING, BRODY and ASHBEY.
Francis W. Donahue argued the cause for appellant, cross-respondent (Skoloff & Wolfe, attorneys, Francis W. Donahue, of counsel, Francis W. Donahue and Phyllis S. Klein, on the brief).
Charles C. Abut argued the cause for respondent, cross-appellant (Lowen & Abut, attorneys, Louis J. Lamatina, on the brief).
The opinion of the court was delivered by ASHBEY, J.A.D.
This is an appeal from the provisions of a judgment of divorce between plaintiff entertainer and comedian Joseph and defendant Nancy Piscopo. The novel issue raised by the trial judge's holding is that the marital property included plaintiff's "celebrity goodwill." See Piscopo v. Piscopo, 231 N.J. Super. 576, 580-581 (Ch.Div. 1988).
At trial plaintiff claimed that the goodwill attributed to his celebrity status was not an asset subject to equitable distribution. On appeal he concedes that celebrity goodwill could be a distributable marital asset. His argument is personal, that his reputation as a celebrity could not be related to probable future earnings, but only to possible future earnings. Defendant asserts that the goodwill associated with plaintiff's status as a celebrity is an intangible but quantifiable asset recognizable by analogy to well-accepted New Jersey case law, and therefore an equitably distributable marital asset.
Irwin Marks, C.P.A., was appointed by the trial judge to value plaintiff's business and pension interests and to calculate *561 the value, if any, of celebrity goodwill and the actual disposable income of plaintiff. Marks had experience as an accountant for famous entertainment personalities. He rendered two reports and testified at trial.
Marks found that substantially all of plaintiff's earned income flowed through Piscopo Productions, Inc., with plaintiff's compensation from the corporation determined at the end of each year.[1] Marks said the valuation of plaintiff's business was analogous to valuing any other professional corporation. He used three out of five years of income from which to derive an average adjusted net income of $288,150 and average adjusted gross receipts of $635,452.
Marks had never valued the business of a show business personality. He had familiarized himself with publications and with custom of the trade, which was to take a percentage of the celebrity's average gross earnings and to apply an appropriate discount. He calculated plaintiff's celebrity goodwill by taking 25% of his average gross earnings over the three year period. He applied no further discount. He said that by using the figure of 25%, he had already discounted the applicable percentage based upon his experience and training.[2] Marks attributed to plaintiff's celebrity goodwill a value of $158,863.
Under N.J.S.A. 2A:34-23, the court may "effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of *562 them during the marriage."[3] While no New Jersey case has held that celebrity goodwill is a form of "property" to be distributed within the meaning of the statute, goodwill is a legally protected interest. J.B. Liebman & Co., Inc. v. Leibman, 135 N.J. Eq. 288, 292 (Ch. 1944); In re Hall, 99 N.J.L. 1, 2 (Sup.Ct. 1923), aff'd 100 N.J.L. 405 (E. & A. 1924).
In the context of equitable distribution, the leading case holding that goodwill is a distributable asset is Dugan v. Dugan, 92 N.J. 423 (1983). In Dugan the Supreme Court held that the goodwill attributed to the solely owned professional corporation of a lawyer was subject to equitable distribution, despite the fact that ethical considerations prevented plaintiff from selling his practice. The Court said that business goodwill existed although the business depended entirely upon the skill of one person and had no book value. Id. at 429. The Court defined goodwill as "essentially reputation that will probably generate future business." Ibid. The Court said further:
... [goodwill] does not exist at the time professional qualifications and a license to practice are obtained. A good reputation is earned after accomplishment and performance. Field testing is an essential ingredient before goodwill comes into being. Future earning capacity per se is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting goodwill is property subject to equitable distribution. [Id. at 433].
The trial judge in this case analogized the celebrity goodwill of plaintiff to the professional goodwill of Dugan. Piscopo v. Piscopo, 231 N.J. Super. at 580 (slip opinion at 5). Plaintiff distinguishes Dugan on the ground that a successful professional has a reliable future income, whereas show business is volatile. The Dugan Court said, however, that the valuation of goodwill is not measured by future earnings, but by past earning capacity and the probability that such past earnings will continue. Dugan v. Dugan, 92 N.J. at 433.
*563 Contrary to plaintiff's contention, "the possible" earnings which the Dugan Court distinguished from "probable" earnings referred to earnings from a new license or degree untested in the marketplace. Plaintiff's record of past earning was undisputed. It was also undisputed that whatever plaintiff had achieved as a celebrity had taken place during the marriage. While the trial judge recognized that it would be difficult to value plaintiff's celebrity goodwill, that difficulty would not affect its includability in the marital estate.[4]Id. at 435.
The trial judge said:
... The Court cannot countenance the anomaly that would result if one branch of Chancery vigorously protected plaintiff's person and business from another's "unjust enrichment by the theft of [his] goodwill," Ali v. Playgirl, Inc., 447 F. Supp. 723, 729 (S.D.N.Y. 1978), while another branch deprived a spouse from sharing in that very same protectible interest. [Piscopo v. Piscopo, 231 N.J. Super. at 579 (slip opinion at 4)].
The trial judge also cited authority in which a person's name and likeness had been recognized as a property right and given legal protection. Estate of Presley v. Russen, 513 F. Supp. 1339, 1359 (D.N.J. 1981); Canessa v. J.I. Kislak, Inc., 97 N.J. Super. 327, 339 (Law Div. 1967). Piscopo v. Piscopo, 231 N.J. Super. at 579 (slip opinion at 4).
In her opinion, the trial judge also cited a New York case, Golub v. Golub, 139 Misc.2d 440, 527 N.Y.S.2d 946 (Sup.Ct. 1988), where the court ruled on a similar question. The financial issues there stemmed from the divorce of actress and model Marisa Berenson. The New York court recognized her earning potential as an asset and held that her spouse was entitled to a share of its value. Unlike plaintiff, Berenson had established a successful modeling and acting career before the marriage, but during the course of the marriage her earnings appreciated, due, in part, as the court found, to the husband's efforts. (The husband was an attorney.) The court held that this increase in *564 value was marital property subject to equitable distribution (the court did not use the term "goodwill"). The New York court said:
... There seems to be no rational basis upon which to distinguish between a degree, a license, or any other special skill that generates substantial income. In determining the value of marital property, all such income generating assets should be considered if they accumulated while the marriage endured. If one spouse has sacrificed and assisted the other in an effort to increase that other spouse's earning capacity, it should make no difference what shape or form that asset takes so long as it in fact results in an increase earning capacity....
The noncelebrity spouse should be entitled to a share of the celebrity spouse's fame, limited, of course, by the degree to which that fame is attributable to the noncelebrity spouse. The source of the fame must still be traced to the marital efforts. [139 Misc.2d at 446-447, 527 N.Y.S.2d at 950 (citation omitted)].[5]
The court-appointed accountant in the case before us calculated the value of plaintiff's corporation by including plaintiff's goodwill and the trial judge also so allocated the goodwill in her oral opinion. In her published opinion, however, and in the final judgment of divorce, the trial judge separately listed the asset.
Plaintiff contends, and we agree, that New York law differs materially from ours and from that of other states because in New York the value of a license alone is considered marital property.[6] Plaintiff's reliance on Lynn v. Lynn, 91 N.J. 510 (1982), and on Mahoney v. Mahoney, 91 N.J. 488 (1982), however, is misplaced. We accept the accountant's analysis which *565 conforms to ours and to that of the majority of states concerning the value in a marital estate of a business which is based upon personal competence.[7] Plaintiff had such a business, the earnings of which were undisputed, and which he conceded had value.
We agree with the Family Part that the goodwill value of plaintiff's business was a distributable marital asset and affirm that part of the judgment.
[Here the court disposed of other issues on appeal.]
NOTES
[1] Piscopo Productions, Inc., as the trial judge noted, was actually owned: plaintiff: 51%; defendant: 48%; plaintiff's father: 1%. Two other business entities, "Joe Piscopo West" and "Little Joey Music," were not treated separately by the accountant, based upon the manner in which plaintiff had designated them for accounting and tax purposes.
[2] Plaintiff's supplemental answers to interrogatories listed the fair market value of Piscopo Productions at a value which his accountant read to be at least $205,000. Plaintiff's case information statement listed the value of Piscopo Productions at $115,000. His accountant was unable to explain these values, although neither was intended to include goodwill.
[3] This statute has been recently amended. See L. 1988, c. 153, § 4.
[4] The issue of valuation is moot. While the trial judge's published opinion deferred valuation, at oral argument we were advised that the parties stipulated $98,708.60 as the value of plaintiff's celebrity goodwill.
[5] Our review of the Golub record indicates that the court awarded no equitable distribution for any portion of the celebrity goodwill. That portion of the opinion was omitted from publication. A somewhat similar result was reached in Getz v. Getz, N.Y.L.J., Mar. 2, 1989, at 28-29 (N.Y. Sup. Ct. 1989).
[6] See O'Brien v. O'Brien, 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (Ct.App. 1985); McGowan v. McGowan, 142 A.D.2d 355, 535 N.Y.S.2d 990 (App.Div. 1988); cf. Annotation, "Spouse's professional degree or license as marital property for purposes of alimony, support, or property settlement," 4 A.L.R.4th 1294, 1295-1301 (1981 & Supp. 1988) (collected cases); Rubin v. Rubin, 230 Neb. 919, 434 N.W.2d 329 (Sup.Ct. 1989) (medical degree is not distributable asset); Hoak v. Hoak, 370 S.E.2d 473 (W. Va.Sup.Ct. 1988) (professional degree earned during marriage is not marital property subject to equitable distribution).
[7] See Annotation, "Accountability of good will of professional practice in actions arising from divorce or separation," 52 A.L.R.3d 1344, 1344-1346 (1973 & Supp. 1988) (collected cases); 24 Am.Jur.2d, Divorce and Separation, § 899 at 881-882; Molloy v. Molloy, 158 Ariz. 64, 761 P.2d 138 (Ct.App. 1988) (husband's interest in law firm's goodwill is distributable asset); Buckl v. Buckl, 373 Pa.Super. 521, 542 A.2d 65 (Super.Ct. 1988) (value of husband's portion of goodwill in architectural firm is subject to equitable distribution); Peerenboom v. Peerenboom, 147 Wis.2d 547, 433 N.W.2d 282 (Ct.App. 1988) (goodwill of dental practice is distributable asset to the extent it is marketable and exceeds value of practice's assets and husband's skills and services); but see Antolik v. Harvey, ___ Haw. App. ___, 761 P.2d 305 (Ct.App. 1988) (true goodwill, that which is not dependent upon voluntary continued presence of professional, is distributable asset).