## F. ELKUS, Respondent, v PETER ELKUS, Appellant.

First Department, July 2, 1991

---

### APPEARANCES OF COUNSEL

*Alfred Ferrer, III,* of counsel *(Stacey Hallerman* with him on the brief; *Bass & Ullman,* attorneys), for appellant.

*Jeanne Wilmot Carter* of counsel *(Raimonde L. Schwarz* with her on the brief; *Raoul Lionel Felder, P. C.,* attorney), for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

In this matrimonial action, the plaintiff, Frederica von Stade Elkus, moved for an order determining, prior to trial, whether her career and/or celebrity status constituted marital property subject to equitable distribution. The parties have already stipulated to mutual judgments of divorce terminating their 17-year marriage and to joint custody of their two minor children. The trial on the remaining economic issues has been stayed pending the outcome of this appeal from the order of the Supreme Court, which had determined that the enhanced value of the plaintiff's career and/or celebrity status was not marital property subject to equitable distribution. Contrary to the conclusion reached by the Supreme Court, we find that to the extent the defendant's contributions and efforts led to an increase in the value of the plaintiff's career, this appreciation was a product of the marital partnership, and, therefore, marital property subject to equitable distribution.

At the time of her marriage to the defendant on February 9, 1973, the plaintiff had just embarked on her career, performing minor roles with the Metropolitan Opera Company. During the course of the marriage, the plaintiff's career succeeded dramatically and her income rose accordingly. In the first year of the marriage, she earned $2,250. In 1989, she earned $621,878. She is now a celebrated artist with the Metropolitan Opera, as well as an international recording artist, concert and television performer. She has garnered numerous awards, and has performed for the President of the United States.

During the marriage, the defendant traveled with the plaintiff throughout the world, attending and critiquing her performances and rehearsals, and photographed her for album covers and magazine articles. The defendant was also the plaintiff's voice coach and teacher for 10 years of the marriage. He states that he sacrificed his own career as a singer and teacher to devote himself to the plaintiff's career and to the lives of their young children, and that his efforts enabled the plaintiff to become one of the most celebrated opera singers in the world. Since the plaintiff's career and/or celebrity status increased in value during the marriage due in part

to his contributions, the defendant contends that he is entitled to equitable distribution of this marital property.

The Supreme Court disagreed, refusing to extend the holding in *O'Brien v O'Brien* (66 NY2d 576) in which the Court of Appeals determined that a medical license constituted marital property subject to equitable distribution, to the plaintiff's career as an opera singer. The court found that since the defendant enjoyed a substantial life-style during the marriage and since he would be sufficiently compensated through distribution of the parties' other assets, the plaintiff's career was not marital property.

There is a paucity of case law and no appellate authority in New York governing the issue of whether a career as a performing artist, and its accompanying celebrity status, constitute marital property subject to equitable distribution. The plaintiff maintains that since her career and celebrity status are not licensed, are not entities which are owned like a business, nor are protected interests which are subject to due process of law, they are not marital property. In our view, neither the Domestic Relations Law, nor relevant case law, allows for such a limited interpretation of the term marital property.

Domestic Relations Law § 236 (B) (1) (c) broadly defines marital property as property acquired during the marriage "regardless of the form in which title is held". In enacting the Equitable Distribution Law (L 1980, ch 281, § 9), the Legislature created a radical change in the traditional method of distributing property upon the dissolution of a marriage *(Price v Price,* 69 NY2d 8, 14). By broadly defining the term "marital property", it intended to give effect to the "economic partnership" concept of the marriage relationship *(supra,* at 15; *Majauskas v Majauskas,* 61 NY2d 481). It then left it to the courts to determine what interests constitute marital property.

Things of value acquired during marriage are marital property even though they may fall outside the scope of traditional property concepts *(O'Brien v O'Brien, supra;* Florescue, *"Market Value", Professional Licenses and Marital Property: A Dilemma in Search of a Horn,* 1982 NY St B Assn Fam L Rev 13 [Dec]). The statutory definition of marital property does not mandate that it be an asset with an exchange value or be salable, assignable or transferable. (Freed, Brandes and Weidman, *"What is Marital Property?",* NYLJ, Dec. 5, 1990, at 3, col 1.) The property may be tangible or intangible *(ibid.).*

Medical licenses have been held to enhance the earning capacity of their holders, so as to enable the other spouse who made direct or indirect contributions to their acquisition, to share their value as part of equitable distribution *(O'Brien v O'Brien, supra; Maloney v Maloney,* 137 AD2d 666; *Raff v Raff,* 120 AD2d 507). A Medical Board certification *(Savasta v Savasta,* 146 Misc 2d 101 [Sup Ct, Nassau County]), a law degree *(Cronin v Cronin,* 131 Misc 2d 879 [Sup Ct, Nassau County]), an accounting degree *(Vanasco v Vanasco,* 132 Misc 2d 227 [Sup Ct, Nassau County]), a podiatry practice *(Morton v Morton,* 130 AD2d 558), the licensing and certification of a physician's assistant *(Morimando v Morimando,* 145 AD2d 609), a Masters degree in teaching *(McGowan v McGowan,* 142 AD2d 355) and a fellowship in the Society of Actuaries *(McAlpine v McAlpine,* 143 Misc 2d 30 [Sup Ct, Suffolk County]) have also been held to constitute marital property.

Although the plaintiff's career, unlike that of the husband in *O'Brien (supra),* is not licensed, the *O'Brien* court did not restrict its holding to professions requiring a license or degree. In reaching its conclusion that a medical license constitutes marital property, the *O'Brien* court referred to the language contained in Domestic Relations Law § 236 which provides that in making an equitable distribution of marital property, "the court shall consider:

"(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and *to the career or career potential* of the other party [and]

"(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession" (Domestic Relations Law § 236 [B] [5] [d] [6], [9] [emphasis added]).

The court also cited section 236 [B] [5] [e] which provides that where, equitable distribution of marital property is appropriate, but "the distribution of an interest in a business, corporation or profession would be contrary to law", the court shall make a distributive award in lieu of an actual distribution of the property *(O'Brien v O'Brien, supra,* 66 NY2d, at 584).

The Court of Appeals' analysis of the statute is equally applicable here. "The words mean exactly what they say: that an interest in a profession or professional career potential is

marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family" *(O'Brien v O'Brien, supra,* at 584). Nothing in the statute or the *O'Brien* decision supports the plaintiff's contention that her career and/or celebrity status are not marital property. The purpose behind the enactment of the legislation was to prevent inequities which previously occurred upon the dissolution of a marriage. Any attempt to limit marital property to professions which are licensed would only serve to discriminate against the spouses of those engaged in other areas of employment. Such a distinction would fail to carry out the premise upon which equitable distribution is based, i.e., that a marriage is an economic partnership to which both parties contribute, as spouse, parent, wage earner or homemaker (Assembly mem, 1980 NY Legis Ann, at 130; Governor's mem of approval, 1980 McKinney's Session Laws of NY, at 1863; *O'Brien v O'Brien, supra,* at 585).

In *Golub v Golub* (139 Misc 2d 440 [Sup Ct, NY County]), the Supreme Court agreed with the defendant husband that the increase in value in the acting and modeling career of his wife, Marisa Berenson, was marital property subject to equitable distribution as a result of his contributions thereto. Like Ms. von Stade, Ms. Berenson claimed that since her celebrity status was neither "professional" nor a "license", and, since her show business career was subject to substantial fluctuation, it should not be considered "marital property".

The court disagreed, concluding at page 447 that "the skills of an artisan, actor, professional athlete or any person whose expertise in his or her career has enabled him or her to become an exceptional wage earner should be valued as marital property subject to equitable distribution" *(see also, Getz v Getz,* NYLJ, Mar. 2, 1989, at 28, col 6 [Sup Ct, Westchester County]). As the *Golub* court found, it is the enhanced earning capacity that a medical license affords its holder that the *O'Brien* court deemed valuable, not the document itself. There is no rational basis upon which to distinguish between a degree, a license, or any other special skill that generates substantial income.

As further noted by the *Golub* court, there is tremendous potential for financial gain from the commercial exploitation of famous personalities. While the plaintiff insists that she will never be asked to endorse a product, this is simply

speculation. More and more opportunities have presented themselves to her as her fame increased. They will continue to present themselves to her as she continues to advance in her career. The career of the plaintiff is unique, in that she has risen to the top in a field where success is rarely achieved.

Like the parties here, after Joe Piscopo and his wife married in 1973, they focused on one goal—the facilitation of his rise to stardom *(Piscopo v Piscopo,* 231 NJ Super 576, 555 A2d 1190, *affd* 232 NJ Super 559, 557 A2d 1040, *certification denied* 117 NJ 156, 564 A2d 875). The defendant wife claimed that her husband's celebrity goodwill was a distributable asset and that she was entitled to a share in his excess earning capacity to which she contributed as homemaker, caretaker of their child, and sounding board for his artistic ideas.

Rejecting Mr. Piscopo's argument that celebrity goodwill is distinguishable from professional goodwill since professional goodwill has educational and regulatory requirements while celebrity goodwill requires ineffable talent, the court held that "it is the person with particular and uncommon aptitude for some specialized discipline whether law, medicine or entertainment that transforms the average professional or entertainer into one with measurable goodwill" *(Piscopo v Piscopo, supra,* 231 NJ Super, at 580-581, 555 A2d, at 1191). We agree with the courts that have considered the issue, that the enhanced skills of an artist such as the plaintiff, albeit growing from an innate talent, which have enabled her to become an exceptional earner, may be valued as marital property subject to equitable distribution.

The plaintiff additionally contends that her career is not marital property because she had already become successful prior to her marriage to the defendant. As noted, *supra,* during the first year of marriage, the plaintiff earned $2,250. By 1989, her earnings had increased more than 275 fold. Further, in *Price v Price (supra,* at 11), the Court of Appeals held that "under the Equitable Distribution Law an increase in the value of separate property of one spouse, occurring during the marriage and prior to the commencement of matrimonial proceedings, which is due in part to the indirect contributions or efforts of the other spouse as homemaker and parent, should be considered marital property (Domestic Relations Law § 236 [B] [1] [d] [3])" *(see, Capasso v Capasso,* 119 AD2d 268; *Clerk v Clerk,* 132 AD2d 456, *lv denied* 70 NY2d 611). In this case, it cannot be overlooked that the defendant's contributions to plaintiff's career were direct and concrete,

going far beyond child care and the like, which he also provided.

While it is true that the plaintiff was born with talent, and, while she had already been hired by the Metropolitan Opera at the time of her marriage to the defendant, her career, at this time, was only in the initial stages of development. During the course of the marriage, the defendant's active involvement in the plaintiff's career, in teaching, coaching, and critiquing her, as well as in caring for their children, clearly contributed to the increase in its value. Accordingly, to the extent the appreciation in the plaintiff's career was due to the defendant's efforts and contributions, this appreciation constitutes marital property.

In sum, we find that it is the nature and extent of the contribution by the spouse seeking equitable distribution, rather than the nature of the career, whether licensed or otherwise, that should determine the status of the enterprise as marital property.

We have considered the parties' remaining contentions and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Walter M. Schackman, J.), entered September 26, 1990, which determined that the plaintiff's career and/or celebrity status was not "marital property" subject to equitable distribution, should be reversed, on the law, without costs, and the matter should be remitted to the Supreme Court for further proceedings.

MILONAS, J. P., ASCH, SMITH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on September 26, 1990, unanimously reversed, on the law, without costs, and the matter remitted to the Supreme Court for further proceedings.