OPINION OF THE COURT
Robert J. Lunn, J.
Defendant in this divorce action is a highly successful and well-compensated account executive and financial advisor with Morgan Stanley Dean Witter. This court is presented with a unique question raised by defendant in the context of a motion for partial summary judgment. As stated in defendant’s order to show cause, he seeks an order determining as a matter of law that “the clients serviced by the defendant at Morgan Stanley Dean Witter do not constitute ‘his book of business’, which is a marital asset subject to valuation and distribution.” Ac *771 cordingly, he seeks to dismiss his wife’s claim for equitable distribution of this alleged marital asset.
Preliminarily, the remedy of partial summary judgment is appropriate to determine this type of issue prior to trial. (See, West v West, 213 AD2d 1025 [4th Dept 1995]; Hougie v Hougie, 261 AD2d 161 [1st Dept 1999].) Additionally, while this action was commenced on January 11, 2000, there has been little if any discovery by plaintiff relative to her claims. In fact, other than the affirmations of the parties’ attorneys, very little proof in proper evidentiary form has been offered by either party in support of their respective positions.
Turning to the merits, the Domestic Relations Law broadly defines marital property as “all property acquired by either or both spouses during the marriage * * * regardless of the form in which title is held.” (Domestic Relations Law § 236 [B] [1] [c].) The Legislature adopted this expansive definition in recognition “that the marriage relationship is also an economic partnership.” (Governor’s Approval Mem, 1980 McKinney’s Session Laws of NY, at 1863; see also, Majauskas v Majauskas, 61 NY2d 481, 489 [1984]; Price v Price, 69 NY2d 8, 14 [1986].) It has been reserved to the courts to determine what interests fall within the statutory definition. The Court of Appeals has characterized the statutory definition as “sweeping” and “ ‘recognizes that spouses have an equitable claim to things of value arising out of the marital relationship.’ ” (DeJesus v DeJesus, 90 NY2d 643, 647 [1997]; O’Brien v O’Brien, 66 NY2d 576, 583 [1985].) These “things of value” may be tangible or intangible. (Elkus v Elkus, 169 AD2d 134, 136 [1st Dept 1991].) They also may not fit traditional common-law concepts of property “because the New York Legislature deliberately went beyond traditional property concepts when it formulated the Equitable Distribution Law.” (O’Brien, supra, at 583.)
Defendant does not claim that his “book of business” is his separate property and therefore not subject to equitable distribution. Rather, he claims that it is not his property or property at all. Therefore, it must first be determined what exactly is the property or “thing of value” which plaintiff seeks to characterize as marital property. Both plaintiff and defendant refer to the property interest which plaintiff seeks to value as defendant’s “book of business” or client base which he has accumulated while an account executive at Morgan Stanley Dean Witter. Defendant argues that he has no ownership interest in his “book of business” or client base. As such, it cannot be property acquired by either spouse during the marriage and *772 hence subject to equitable distribution. Rather, as an employee, the clients are those of Morgan Stanley Dean Witter. If defendant were to leave the firm, the client accounts would remain at Morgan Stanley Dean Witter.
In furtherance of this argument, defendant submitted a copy of the employment agreement he signed when he was originally hired. That agreement provides that all customer lists and accounts are property of the company. Also, pursuant to the agreement, defendant is prohibited from soliciting any clients of the company for a period of 90 days. Defendant focuses on the client accounts as the “thing of value” of which plaintiff seeks a marital share. Defendant compares himself to any other commissioned salesman; not unlike a salesperson for a soft drink company, pharmaceutical company or telephone company. Like these other salespersons, since he does not have a proprietary interest in the customer’s account, defendant argues there can be no marital property subject to equitable distribution.
Plaintiff’s counsel does not focus on the client account itself as the thing of value which was acquired during the marriage. Rather, he describes the “book of business” as “client relationships of trust and confidence * * * which create for the Defendant the ability to realize substantial monies either now or at some future date.” Plaintiff argues that defendant’s position is not like the soft drink salesperson. To the contrary, a stockbroker, not unlike an attorney or accountant, must nurture and develop a relationship of trust and confidence with the client in order to ensure the future business of the client. Plaintiff asserts that it is the probability that clients will follow the defendant no matter which firm employs him that is the asset or “thing of value” created during the marriage. In support of her assertion that defendant’s “book of business” is a “thing of value,” plaintiff has submitted the affidavit of William F. Holly, chairman of the Board of Sage Rutty & Company, Inc. Mr. Holly states that it is common in the financial services/ brokerage industry in the Monroe County area for a firm to pay a broker a sum of money based upon his or her “book of business” and their last 12 months trailing commissions when leaving one firm and joining another. In plaintiff’s view, it is this enhanced earning ability reflected in professional goodwill for which a competing brokerage house will pay a broker to join its firm which she seeks to value.
Plaintiff’s description of defendant’s “book of business” compares favorably with the legal definition of goodwill. In the *773 old English case of Cruttwell v Lye (17 Ves 335, 346, 34 Eng Rep 129, 134 [1810]), Lord Eldon defined goodwill as, “The goodwill which has been the subject of sale is nothing more than the probability that the old customers will resort to the old place.” Chief Judge Cardozo spoke similarly of goodwill when he wrote:
“Men will pay for any privilege that gives a reasonable expectancy of preference in the race of competition * * * Such expectancy may come from succession in place or name or otherwise to a business that has won the favor of its customers. It is then known as good will.” (Matter of Brown, 242 NY 1, 6 [1926].)
This court agrees with plaintiff that defendant takes too narrow a view of the interest claimed to be marital property. Defendant’s “book of business” is not the customer accounts maintained by the brokerage house. It is the personal or professional goodwill acquired by defendant which is the “thing of value” plaintiff seeks to have equitably distributed. This court is thus asked to decide whether the personal or professional goodwill of a stockbroker is marital property as contemplated by Domestic Relations Law § 236 (B) (1) (c).
Any analysis of what property interests constitute marital property must start with the Court of Appeals decision in O’Brien v O’Brien (66 NY2d 576 [1985], supra). The O’Brien Court focused on the explicit language of Domestic Relations Law § 236 and its legislative history in holding that a license to practice medicine is marital property subject to equitable distribution. The High Court stated (at 584):
“Section 236 provides that in making an equitable distribution of marital property, ‘the court shall consider: * * * (6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party [and] * * * (9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession’ (Domestic Relations Law § 236 [B] [5] [d] [6], [9] [emphasis added]). Where equitable distribution of marital property is appropriate but ‘the distribution of an interest in a *774 business, corporation or profession would be contrary to law’ the court shall make a distributive award in lieu of an actual distribution of the property (Domestic Relations Law § 236 [B] [5] [e] [emphasis added]). The words mean exactly what they say: that an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions of the non-title-holding spouse, including financial contributions and nonfinancial contributions made by caring for the home and family.”
The court looked at the contributions of one spouse to the career or career potential of the other and decided that where the product of that joint effort resulted in a professional license, the license was marital property. (Id., at 586.) It did not matter that a professional license did not fit into traditional, common-law views of property such as having an exchange value on the open market and being capable of sale, assignment or transfer. This was because, as mentioned earlier, “marital property is to be judged by the language of the statute which created this new species of property previously unknown at common law or under prior statutes. Thus, whether the license fits within traditional property concepts is of no consequence.” (Id., at 586.) Lastly, a professional license was considered marital property because indeed it could be considered property even outside of the context of-the Equitable Distribution Law. The Court of Appeals found it to be “a valuable property right, reflected in the money, effort and lost opportunity for employment expended in its acquisition, and also in the enhanced earning capacity it affords its holder.” (Id., at 586.)
The O’Brien analysis is not limited to professional licenses and has been used to find a medical board certification (Savasta v Savasta, 146 Misv 2d 101 [Sup Ct, Nassau County]), a law degree (Cronin v Cronin, 131 Misc 2d 879 [Sup Ct, Nassau County]), an accounting degree (Vanasco v Vanasco, 132 Misc 2d 227 [Sup Ct, Nassau County]), a podiatry practice (Morton v Morton, 130 AD2d 558), the licensing and certification of a physician’s assistant (Morimando v Morimando, 145 AD2d 609), a Master’s degree in teaching (McGowan v McGowan, 142 AD2d 355), a Master’s degree and a permanent certificate in school administration (DiCaprio v DiCaprio, 162 AD2d 944 [4th Dept 1990]), a fellowship in the Society of Actuaries (McAlpine v McAlpine, 143 Mise 2d 30 [Sup Ct, Suffolk County]), the celebrity career of an opera singer (Elkus v Elkus, *775 169 AD2d 134, supra), the increase in value of the wife’s career as a model and actress (Golub v Golub, 139 Misc 2d 440 [Sup Ct, NY County]), the enhanced earning capacity attributed to a former Congressional career (Martin v Martin, 200 AD2d 304) and the enhanced earning capacity of an investment banker (Hougie v Hougie, 261 AD2d 161 [1st Dept 1999], supra) all to constitute marital property. All of these decisions, like O’Brien (supra), base their finding of marital property on the “enhanced earning capacity” which the “thing of value” provided to its holder. (See, e.g., McGowan v McGowan, 142 AD2d 355 [2d Dept 1988], supra.)
Here, the “thing of value” is the personal or professional goodwill of a stockbroker or financial advisor. Justice Silbermann’s decision in Golub v Golub (139 Misc 2d 440 [Sup Ct, NY County 1988], supra) is particularly instructive in deciding whether personal or professional goodwill is marital property as that decision equated the enhanced earning capacity of a celebrity with professional goodwill and the goodwill of a business. As stated in Golub, “When a person’s expertise in a field has allowed him or her to be an exceptional wage earner, this generates a value similar to that of the goodwill of a business.” (Golub, supra, at 445-446.) In applying O’Brien (supra), Justice Silbermann held that “the skills of an artisan, actor, professional athlete or any person whose expertise in his or her career has enabled him or her to become an exceptional wage earner should be valued as marital property subject to equitable distribution.” (Golub, at 447.) The rationale of this holding was clearly not limited to the unique careers of celebrities. Rather, it was predicated on a logical, uniform extension of the rule established in O’Brien. Again quoting Justice Silbermann:
“There seems to be no rational basis upon which to distinguish between a degree, a license, or any other special skill that generates substantial income. In determining the value of marital property, all such income-generating assets should be considered if they accumulated while the marriage endured. If one spouse has sacrificed and assisted the other in an effort to increase that other spouse’s earning capacity, it should make no difference what shape or form that asset takes so long as it in fact results in an increased earning capacity.” (Golub, at 446.)
At least two other jurisdictions have considered and held personal goodwill to be marital property. The Supreme Court *776 of New Jersey has held that an attorney’s goodwill in his exclusively owned professional corporation is property subject to equitable distribution upon divorce. (Dugan v Dugan, 92 NJ 423, 457 A2d 1 [1983].) The New Jersey high court defined goodwill as “essentially reputation that will probably generate future business.” (Id., at 429, 457 A2d, at 3.) It was viewed as a legally protected interest. (Id., at 430, 457 A2d, at 4.) Further, the court found goodwill to exist in personal service enterprises as well as other businesses. (Id., at 432, 457 A2d, at 5.) In the context of a personal service business, reputation was seen by the Dugan court to be at the core of evaluating goodwill. (Id., at 433, 457 A2d, at 6.) Specifically with respect to evaluating whether the goodwill of an attorney engaged in an individual practice was property subject to equitable distribution, the court stated:
“A good reputation is earned after accomplishment and performance. Field testing is an essential ingredient before goodwill comes into being. Future earning capacity per se is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs the resulting goodwill is property subject to equitable distribution.” (Id., at 433, 457 A2d, at 6.)
This result was deemed appropriate because:
“After divorce, the law practice will continue to benefit from that goodwill as it had during the marriage. Much of the economic value produced during an attorney’s marriage will inhere in the goodwill of the law practice. It would be inequitable to ignore the contribution of the non-attorney spouse to the development of that economic resource.” (Id., at 434, 457 A2d, at 6.)
. Another New Jersey appellate court, relying on Dugan and focusing on the plaintiffs past earnings and the probability that such earnings would continue in the future, held that comedian Joe Piscopo’s celebrity goodwill was no different than the professional goodwill of the attorney in Dugan and hence likewise marital property. (Piscopo v Piscopo, 232 NJ Super 559, 557 A2d 1040 [1989].) Lastly, in California, the professional goodwill of a law practice is marital property. (See, In re Marriage of Fenton, 134 Cal App 3d 451, 184 Cal Rptr 597 [1982].)
*777 Clearly, Mr. Moll is an exceptional wage earner. His net worth statement indicates that his income in 1999 was $392,000. Plaintiff has also submitted proof sufficient to raise a triable issue of fact that defendant’s career as a stockbroker and financial advisor carries with it significant goodwill in the form of his “book of business” which can be valued. (Cf. Bystricky v Bystricky, 177 Misc 2d 914 [Sup Ct, Nassau County 1998].) It is noteworthy that the value attributed to defendant’s “book of business” by plaintiff is based upon defendant’s previous 12 months of commissions and does not represent post-marital earnings. In the only reported decision found by this court, a similar “signing bonus” was found to be a marital asset subject to equitable distribution. (See, Reiss v Reiss, 654 So 2d 268 [Fla 1st Dist 1995].) This intangible career advantage possessed by and inseparable from the defendant is a valuable asset. To the extent that the plaintiff has made direct or indirect contributions during the marriage to the enhancement of defendant’s career resulting in its goodwill, under the economic partnership theory of a marriage, she should share in the fruits of their joint labor. (See, Kelly, Sharing a Piece of the Future Post-Divorce: Toward a More Equitable Distribution of Professional Goodwill, 51 Rutgers L Rev 569, 602-603 [1999].) It would be inequitable and contrary to the expansive definition of marital property as construed by the Court of Appeals to not consider defendant’s “book of business” or personal goodwill as marital property.
This court is cognizant of the Fourth Department’s decision in West v West (213 AD2d 1025 [1995], supra). A review of the record on appeal in that case reveals significant factual distinctions between these two matters justifying different results. At the time the divorce action in West was commenced, Mr. West was a 54-year-old banking executive. He had worked for 32 years at Marine Midland Bank rising to the position of sector executive, reporting only to the president and chief operating officer of the company. Mr. West had recently left Marine Midland for a position with Fleet Bank as executive vice-president in charge of administrative services. Mr. West was then able, if he so elected, to commence receiving payments from his Marine Midland pension, the value of which benefits exceeded $1,000,000. The lower court, in its memorandum decision, specifically determined that there was “no future enhanced earnings to be distributed by this Court” (West v West, Sup Ct, Erie County, Mar. 3, 1994, index No. 8222/92, slip opn, at 13). Justice Gorski further stated that Mr. West’s *778 “work history and earnings have brought the parties to the point where a significant retirement pension is able to be triggered. [Mr. West’s] earnings are decreasing, his future earnings and employment are uncertain, and he has no degree of job security.” (Id., at 14.) Under those circumstances, a “thing of value” had not been created causing an enhanced earning capacity. That point in Mr. West’s career, if it had ever existed, had long passed.
In this case, Mr. Moll is a 40-year-old financial advisor with Morgan Stanley Dean Witter. He has been employed in this capacity by Morgan Stanley Dean Witter for 17 years. Mr. Moll, unlike Mr. West, is just entering the peak years of his earning capability. Most importantly, Mr. West was not engaged in a career in which any significance was placed by the parties on his having to build customer relationships based upon trust and confidence in order to advance his career. In West (supra), Mrs. West never argued that the “thing of value” created during the marriage was the personal goodwill inherent in her husband’s career which could be valued, was regularly valued, and was part and parcel of her husband’s banking career.
The Fourth Department in West (supra) limited itself to whether an enhanced earning capacity subject to equitable distribution was created by virtue of defendant’s undergraduate degree and his attendance at the Harvard Advanced School for Banking. The appellate court also distinguished the two celebrity goodwill cases of Elkus v Elkus (169 AD2d 134, supra) and Golub v Golub (139 Misc 2d 440, supra) by stating that Mr. West was “not engaged in a unique career.” (West v West, 213 AD2d 1025, 1026.) However, the Fourth Department did not disavow the underlying rationales of those two cases. The Court also never expressly considered whether personal or professional goodwill is marital property. On its facts, this case is much closer to the investment banker in Hougie v Hougie (261 AD2d 161, supra), in which the First Department found that the enhanced earning capacity inherent in that career was subject to equitable distribution “regardless of whether or not such a career requires a license” (id., at 162) rather than the career banker in West.
Accordingly, defendant’s application for partial summary judgment is denied. Defendant’s “book of business” or personal goodwill inherent in his career as a stockbroker or financial advisor is a marital asset subject to equitable distribution. Of course, plaintiffs marital share of this asset will be limited ac *779 cording to the degree in which her direct or indirect efforts contributed to creating or increasing defendant’s “book of business” or personal goodwill.