DUNCAN R. SIMMONS *v.* AURA R. SIMMONS
(SC 15658)

Callahan, C. J., and Berdon, Norcott, Katz and McDonald, Js.

Argued December 10, 1997—officially released March 24, 1998

*Frank J. Kolb*, with whom were *David E. Crow* and, on the brief, *Louis A. Crisci, Jr.*, for the appellant (defendant).

*Barbara J. Radlauer*, with whom was *Ralph P. Dupont*, for the appellee (plaintiff).

*Louis I. Parley* and *S. Deborah Eldrich* filed a brief for the Connecticut Chapter of the American Academy of Matrimonial Lawyers as amicus curiae.

CALLAHAN, C. J. The defendant, Aura R. Simmons, appeals from the judgment of the trial court in an action for dissolution of her marriage to the plaintiff, Duncan R. Simmons. She raises three issues: (1) whether the trial court properly concluded that a medical degree is not property subject to equitable distribution pursuant to General Statutes § 46b-81[1] upon dissolution of the marriage; (2) whether, if it is assumed that the medical degree is not property, the trial court abused its discretion in its distribution of the remaining marital property and in denying alimony to the defendant; and (3) whether a contract existed between the parties with regard to the medical degree, which affords the defendant a contractual remedy. We affirm the judgment of the trial court on the first issue and reverse its judgment, in part, on the second issue. We decline to address the third issue.

The trial court made the following findings of fact. The plaintiff and the defendant were married on September 23, 1983, in Fayetteville, North Carolina. At the

[1] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect. . . .

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

time of their marriage, the plaintiff was twenty-three years of age and was a sergeant in the United States Army. The defendant was forty-three years of age and was working as a bartender. There are no children of the marriage. The defendant, however, had six children of her own prior to her marriage to the plaintiff.

During the course of the marriage, both the plaintiff and the defendant pursued their individual educational goals. The defendant obtained two associates degrees, one as a surgical technician and one in nursing, culminating in her becoming a registered nurse in 1991. The plaintiff received his undergraduate degree in 1990 and entered medical school. He completed medical school in 1994 and entered a surgical residency program at St. Raphael's Hospital in New Haven, causing the family to relocate to Connecticut from North Carolina. The defendant and the plaintiff both paid their own educational expenses and both were employed and jointly supporting the family unit until the plaintiff entered medical school, when he was prohibited from maintaining outside employment. The plaintiff received loans and grants to pay for medical school and to defray some of the household expenses. The defendant worked and supported the family while the plaintiff attended medical school. She provided financial and emotional support as well as her services as a homemaker. She did not, however, make any direct financial contribution toward the cost of the plaintiff's medical school education.

In the third year of his five year surgical residency, the plaintiff filed an action for dissolution of marriage. At trial, the defendant argued that the plaintiff's medical degree was property subject to equitable distribution pursuant to § 46b-81 upon dissolution of the marriage. She presented an expert witness, Steven Shapiro, an economist, who testified regarding the present value of the plaintiff's medical degree. Shapiro testified that the

plaintiff's future earning potential, reduced to present value, was approximately $3.4 million as a plastic surgeon and $2.8 million as a general surgeon. He concluded that the average of the two, $3.1 million, represents the appropriate value to be assigned to the plaintiff's medical degree.[2] The defendant claimed that the degree's present value should be equitably distributed between the parties and demanded in excess of $1.5 million as a property settlement. In its memorandum of decision analyzing the state of the law of this and other jurisdictions, the trial court concluded that the plaintiff's medical degree was not property subject to equitable distribution pursuant to § 46b-81. The court then issued an order dissolving the marriage, denying alimony to both parties and ordering distribution of the parties' debts and assets. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

I

The first issue raised by the defendant is whether the plaintiff's medical degree is property subject to equitable distribution pursuant to § 46b-81 upon dissolution of the marriage. This is a question of first impression for Connecticut. It is not, however, a new question nationwide. At least thirty-five states have addressed the issue and substantial ink has been expended by academicians and practitioners on this subject. It has been labeled with a number of appellations, the most common of which is the "working spouse/student spouse syndrome," apparently so called because it represents an unfortunate circumstance that too often arises in family courts. In its most basic form, it is

[2] At the time of trial, the plaintiff had not yet decided which surgical specialty he intended to pursue. In point of fact, the plaintiff subsequently was not invited to return to the surgical residency program and, thus, apparently he will be unable to pursue either career.

typified by one spouse who works to provide primary support for the family unit while the other spouse obtains an education, meanwhile earning either nothing or substantially less than he or she otherwise might have earned. Typically, it is also characterized by a relatively short marriage[3] and a working spouse who has made significant sacrifices, for example, forgoing or delaying educational or childrearing opportunities and the current enjoyment of income that could have been produced by the student spouse. The expectation that the future benefit of increased earning capacity would be the reward shared by both is dashed when the marriage disintegrates and one of the parties files an action for dissolution before the anticipated benefits are realized. The critical problem in these situations is that the couple usually has few, if any, assets to be distributed at the time of the dissolution of the marriage. The degree, with its potential for increased earning power, is, therefore, the only thing of real economic value to the parties. See, e.g., *Haugan* v. *Haugan*, 117 Wis. 2d 200, 206–207, 343 N.W.2d 796 (1984), and cases cited there; B. Herring, "Divisibility of Advanced Degrees in Equitable Distribution States," 19 J. Marshall L. Rev. 1, 1-2 (1985).

The defendant argues that she fits within this paradigm and is entitled to share in the benefits of the plaintiff's medical degree by way of a distribution pursuant to § 46b-81 conferring on her an equitable portion of the value of the plaintiff's medical degree.[4] In support

---

[3] Although the short duration of the marriage is not an essential element, it is typical because in longer marriages the parties usually will have completed their education and entered the workforce before the end of the marriage. They are also more likely to have accumulated property in longer marriages.

[4] Although the present facts are not an exact fit with the more typical model, the relationship here generally falls within the basic framework of the paradigm. Unlike the typical working spouse who has forgone educational opportunities, the defendant here did attain a postsecondary education during the marriage and is currently working in her chosen field. Moreover, there is no allegation that the defendant has forgone childrearing opportunities as

of this argument, the defendant asserts that § 46b-81 adopts an " 'all property,' equitable distribution scheme"; *Krafick* v. *Krafick*, 234 Conn. 783, 792, 663 A.2d 365 (1995); pursuant to which this court has given an expansive definition of property that necessarily includes an advanced degree obtained during the marriage.[5] The crux of the defendant's argument rests upon selected language from our opinion in *Krafick*. The plaintiff counters that a medical degree cannot be distributed as property because it has no inherent value independent of the holder and does not fit within the statutory definition of property. We conclude that the plaintiff's medical degree is not property subject to distribution pursuant to § 46b-81.

We are supported in this conclusion by what we deem to be the intent of the legislature, the overwhelming weight of authority in other jurisdictions that have addressed this issue; see footnote 7 of this opinion; and sound public policy considerations. We begin our analysis with the relevant statute, § 46b-81. "We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 793–94.

is often the case. The parties do, however, lack substantial assets, and the marriage was of only moderate duration.

[5] At oral argument, the defendant conceded that such a rule would have to apply to any degree, not simply an advanced degree.

In *Krafick*, we were called upon to determine whether the term property in § 46b-81, which is not defined by the statute or clarified by its legislative history, was broad enough to include vested, though unmatured, pension rights. To that end, we concluded that the legislature intended to adopt the commonly accepted legal definition of property as set forth in Black's Law Dictionary (6th Ed. 1990) p. 1095, which "defines 'property' as the term 'commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditament.' " *Krafick* v. *Krafick*, supra, 234 Conn. 794. By adopting that definition, we acknowledged that the legislature intended the term to be broad in scope. Id., 793–94. While we do not retreat from the definition of property espoused in *Krafick*, we also recognize that it is not without limits. We conclude that the plaintiff's medical degree falls outside those limits.

Whether the interest of a party to a dissolution is subject to distribution pursuant to § 46b-81,[6] depends on whether that interest is: (1) a presently existing property interest or (2) a mere expectancy. See id., 797. "[Section] 46b-81 applies only to presently existing property interests, not 'mere expectancies.' " Id. Therefore, the former interest is subject to equitable distribution upon dissolution, while the latter is not. The

---

[6] In interpreting § 46b-81, we have concluded that "[t]here are three stages of analysis regarding the equitable distribution of each resource: first, whether the resource is property within § 46b-81 to be equitably distributed (classification); second, what is the appropriate method for determining the value of the property (valuation); and third, what is the most equitable distribution of the property between the parties (distribution)." *Krafick* v. *Krafick*, supra, 234 Conn. 792–93. The issue presented in the instant case addresses exclusively the first stage, classification.

prototypical nonproperty interest is an anticipated inheritance, which we consistently have deemed to be a mere expectancy that is precluded from equitable distribution under § 46b-81. See *Rubin* v. *Rubin*, 204 Conn. 224, 236–39, 527 A.2d 1184 (1987); *Krause* v. *Krause*, 174 Conn. 361, 387 A.2d 548 (1978). In *Krafick*, we stated that unlike a property interest, an "expectancy may never be realized . . . . The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence . . . . *[T]he defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence.*" (Citations omitted; emphasis altered; internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 797.

By contrast, a vested pension benefit is property within the meaning of § 46b-81 and, thus, is subject to equitable distribution because it represents a presently existing, enforceable contract right. Id., 795. We reasoned that "vested pension benefits represent an employee's *right* to receive payment in the future, subject ordinarily to his or her living until the age of retirement. The fact that a *contractual right* is contingent upon future events does not degrade that right to an expectancy." (Emphasis altered; internal quotation marks omitted.) Id., 797. Consequently, the defining characteristic of property for purposes of § 46b-81 is the present existence of the right and the ability to enforce that right. Id.

The defendant first argues, by analogy, that a medical degree is substantially similar to pension benefits because both are a means to obtain deferred compensation. In both circumstances, she argues, the marital unit forgoes current income and invests those resources to acquire the benefit of future income. The defendant misconstrues the import of our analysis in *Krafick*.

There, we acknowledged in dicta that a vested pension represents deferred compensation and is often the only substantial asset of the marital unit. Id., 796. Relying on the law of contracts, however, we went on to conclude that *"[a]s contractual rights*, pension benefits are 'a type of *intangible* property,' and, as such, are encompassed in Black's definition of 'property.'" (Emphasis altered.) Id., 795. We repeatedly emphasized the fact that the owner of the pension has a presently existing, enforceable contract right attendant to a vested pension. Id., 795. In conclusion, we stated "that 'property' as used in § 46b-81, includes the right, *contractual in nature,* to receive vested pension benefits in the future." (Emphasis added.) Id., 798. Thus, it is not the pension's character as deferred compensation that makes it property subject to equitable distribution pursuant to § 46b-81, but the presently existing, enforceable contract right to receive the benefits that does so.

The defendant's argument is, therefore, unpersuasive because an advanced degree entails no presently existing, enforceable right to receive any particular income in the future. It represents nothing more than an *opportunity* for the degree holder, through his or her own efforts, in the absence of any contingency that might limit or frustrate those efforts, to earn income in the future. See *Mahoney* v. *Mahoney*, 91 N.J. 488, 496, 453 A.2d 527 (1982) (concluding that professional degree or license is not analogous to vested pension benefits).

The defendant next relies on our statement in *Krafick* that "[t]he fact that a contractual right is contingent upon future events does not degrade that right to an expectancy." (Internal quotation marks omitted.) *Krafick* v. *Krafick*, supra, 234 Conn. 797. She argues, again by analogy, that the fact that an advanced degree is also subject to contingencies in the future should not

prevent its classification as property. This argument misses the crucial prerequisite that the interest must first qualify as an *existing* right before it qualifies as property subject to distribution pursuant to § 46b-81. The enforceable rights inherent in a vested pension make it distinctly different from the expectation of possible benefits afforded by an advanced degree. Additionally, the right to a vested pension benefit has already accrued prior to the action for dissolution. It is presently existing and enforceable, notwithstanding that it is contingent on certain factors such as survival of the pensioner until maturity.

By contrast, the benefits attendant on a newly acquired professional degree have not vested at the time of dissolution, and any benefits derived will accrue only after the dissolution of the marriage. These benefits may never accrue for any number of reasons because the holder has no enforceable right to earn any particular income in his or her chosen profession. Consequently, we conclude that an advanced degree is properly classified as an expectancy rather than a presently existing property interest. It is not, therefore, subject to equitable distribution upon dissolution pursuant to § 46b-81.

The great weight of authority supports this conclusion.[7] The oft-cited rationale for concluding that a

[7] Thirty-five states have addressed this issue. Of them, thirty-four have declined to consider an educational degree marital property subject to equitable distribution. See *Jones* v. *Jones*, 454 So. 2d 1006 (Ala. Civ. App. 1984); *Nelson* v. *Nelson*, 736 P.2d 1145 (Alaska 1987); *Wisner* v. *Wisner*, 129 Ariz. 333, 631 P.2d 115 (1981); *In re Marriage of Sullivan*, 37 Cal. 3d 762, 691 P.2d 1020, 209 Cal. Rptr. 354 (1984); *Graham* v. *Graham*, 194 Colo. 429, 574 P.2d 75 (1978); *Hughes* v. *Hughes*, 438 So. 2d 146 (Fla. App. 1983); *Lowery* v. *Lowery*, 262 Ga. 20, 413 S.E.2d 731 (1992); *In re Marriage of Weinstein*, 128 Ill. App. 3d 234, 470 N.E.2d 551 (1984); *Roberts* v. *Roberts*, 670 N.E.2d 72 (Ind. App. 1996); *In re Marriage of Plasencia*, 541 N.W.2d 923 (Iowa App. 1995); *Inman* v. *Inman*, 648 S.W.2d 847 (Ky. 1982); *Sweeney* v. *Sweeney*, 534 A.2d 1290 (Me. 1987); *Archer* v. *Archer*, 303 Md. 347, 493 A.2d 1074 (1985); *Drapek* v. *Drapek*, 399 Mass. 240, 503 N.E.2d 946 (1987); *Krause* v.

degree is not property subject to distribution is found in *Graham* v. *Graham*, 194 Colo. 429, 574 P.2d 75 (1978). There, the Colorado Supreme Court concluded that "[a]n educational degree . . . is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by mere expenditure of money. It is simply an intellectual achievement that may potentially assist in future acquisition of property. In our view, it has none of the attributes of property in the usual sense of the term." Id., 432.

We agree that an advanced degree has no inherent value extrinsic to the recipient. Its only value rests in

*Krause*, 177 Mich. App. 184, 441 N.W.2d 66 (1989), but see *Moss* v. *Moss*, 80 Mich. App. 693, 264 N.W.2d 97 (1978) (representing conflict between Michigan appellate courts that is not yet resolved); *Riaz* v. *Riaz*, 789 S.W.2d 224 (Mo. App. 1990); *Ruben* v. *Ruben*, 123 N.H. 358, 461 A.2d 733 (1983); *Mahoney* v. *Mahoney*, supra, 91 N.J. 488; *Muckleroy* v. *Muckleroy*, 84 N.M. 14, 498 P.2d 1357 (1972); *Haywood* v. *Haywood*, 106 N.C. App. 91, 415 S.E.2d 565 (1992), rev'd on other grounds, 333 N.C. 342, 425 S.E.2d 696 (1993); *Stevens* v. *Stevens*, 23 Ohio St. 3d 115, 492 N.E.2d 131 (1986); *Hubbard* v. *Hubbard*, 603 P.2d 747 (Okla. 1979); *Stuart* and *Stuart*, 107 Or. App. 549, 813 P.2d 49 (1991); *Hodge* v. *Hodge*, 513 Pa. 264, 520 A.2d 15 (1986); *Becker* v. *Perkins-Becker*, 669 A.2d 524 (R.I. 1996); *Helm* v. *Helm*, 289 S.C. 169, 345 S.E.2d 720 (1986); *Wehrkamp* v. *Wehrkamp*, 357 N.W.2d 264 (S.D. 1984); *Beeler* v. *Beeler*, 715 S.W.2d 625 (Tenn. App. 1986); *Frausto* v. *Frausto*, 611 S.W.2d 656 (Tex. App. 1980); *Martinez* v. *Martinez*, 754 P.2d 69 (Utah 1988); *Downs* v. *Downs*, 154 Vt. 161, 574 A.2d 156 (1990); *In re Marriage of Anglin*, 52 Wash. App. 317, 759 P.2d 1224 (1988); *Hoak* v. *Hoak*, 370 S.E.2d 473 (W. Va. 1988); *Grosskopf* v. *Grosskopf*, 677 P.2d 814 (Wy. 1984); but see *O'Brien* v. *O'Brien*, 66 N.Y.2d 576, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985) (professional license is distributable as marital property); *McGowan* v. *McGowan*, 136 Misc. 2d 225, 518 N.Y.S.2d 346 (1987) (professional degree is distributable as marital property).

the possibility of the enhanced earning capacity that it might afford sometime in the future. The possibility of future earnings, however, represents a mere expectancy, not a present right. We previously have concluded that "[t]he terms 'estate' and 'property,' as used in the statute [§ 46b-81] *connote presently existing interests*. 'Property' entails *'interests that a person has already acquired* in specific benefits.'" (Emphasis added.) *Rubin* v. *Rubin,* supra, 204 Conn. 230–31. In *Rubin,* we declined to allow a property division in contemplation of an anticipated inheritance. We concluded that "the relevance of probable future income in determining the fair and equitable division of *existing* property . . . does not establish jurisdiction to make allowances from . . . property *other than that held at the time.*" (Emphasis added; internal quotation marks omitted.) Id., 231. "Until our legislature amends § 46b-81 to authorize contingent transfers of expected property, we shall not read such an intent into the statute." Id., 232.

In this regard, we find the rationale of the Supreme Court of Pennsylvania persuasive. In *Hodge* v. *Hodge,* 513 Pa. 264, 520 A.2d 15 (1986), the court denied a professional degree the status of property, concluding that "[i]n instances such as the one now before the Court, the real value being sought is not the diploma but the *future* earned income of the former spouse which will be attained as a result of the advanced degree. The property being sought is actually acquired subsequent to the parties' separation. Thus, the future income sought cannot be 'marital property' because it has not been earned. If it has not been earned, it has not been acquired during the marriage." (Emphasis in original.) Id., 269.

The court in *Hodge* went on to note that "the contribution made by one spouse to another spouse's advanced

degree plays only a small part in the overall achievement." Id. In the same vein, the Supreme Court of Appeals of West Virginia, concluded that "[o]n the whole, a degree of any kind results primarily from the efforts of the student who earns it. Financial and emotional support are important, as are homemaker services, but they bear no logical relation to the value of the resulting degree." *Hoak* v. *Hoak*, 179 W. Va. 509, 513, 370 S.E.2d 473 (1988). The defendant maintains in her reply brief that this assertion "reflects a paleolithic view of marriage" that is inconsistent with the partnership theory of marriage embraced in Connecticut. We disagree.

The defendant reminds us that "the primary aim of property distribution is to recognize that marriage is, among other things, 'a shared enterprise or joint undertaking in the nature of a partnership to which both spouses contribute—directly and indirectly, financially and nonfinancially—*the fruits of which* are distributable at divorce.' " (Emphasis added.) *Krafick* v. *Krafick*, supra, 234 Conn. 795. She argues that the only way to effectuate this purpose in these circumstances is to conclude that the plaintiff's medical degree is marital property. We disagree.

There are other ways to compensate the defendant for her contribution to the plaintiff's degree without subjecting it to classification as property subject to equitable distribution. See B. Herring, supra, 19 J. Marshall L. Rev. 1 (analyzing variety of solutions adopted by courts). Furthermore, while we have acknowledged that the marital union is *akin* to a partnership, we have never held that it is an actual economic partnership. The parties to a marriage do not enter into the relationship with a set of ledgers and make yearly adjustments to their capital accounts. "Marriage is not a business arrangement, and this Court would be loathe to promote any more tallying of respective debits and credits than

already occurs in the average household." *Hoak* v. *Hoak*, supra, 179 W. Va. 514; accord *Mahoney* v. *Mahoney*, supra, 91 N.J. 500. Reducing the relationship, even when it has broken down, to such base terms serves only to degrade and undermine that relationship and the parties.

Of the numerous states that have passed on this question, only one has concluded that an advanced degree is distributable as marital property. The New York Court of Appeals, in *O'Brien* v. *O'Brien*, 66 N.Y.2d 576, 583–84, 489 N.E.2d 712, 498 N.Y.S.2d 743 (1985), concluded that a professional license is "marital property" within the context of the governing New York statute. The New York Appellate Division, relying on the rationale of *O'Brien*, subsequently also concluded, in *McGowan* v. *McGowan*, 136 Misc. 2d 225, 518 N.Y.S.2d 346 (1987), that a professional degree is marital property. In *O'Brien*, the working wife supported the student husband through medical school only to have the husband file for divorce two months after obtaining a medical license. The court concluded that New York's unique statutory scheme was broader than those of other states that had declined to consider degrees and licenses marital property, and that, unlike other states, "*our statute* recognizes that spouses have an equitable claim to *things of value* arising out of the marital relationship and classifies them as subject to distribution by focusing on the marital status of the parties at the time of acquisition. . . . [T]hey hardly fall within the traditional property concepts because there is no common-law property interest remotely resembling marital property." (Emphasis added; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, supra, 583. The court further acknowledged that "the New York Legislature deliberately went beyond traditional concepts when it formulated the Equitable Distribution Law . . . ." (Citation omitted.) Id.

By contrast, we have interpreted our equitable distribution scheme under § 46b-81 as embracing the traditional, albeit broad, legal concept of property as defined in Black's Law Dictionary. *Krafick* v. *Krafick,* supra, 234 Conn. 794. In *Krafick,* we concluded that this definition represents the "common understanding" of the term. Id. Furthermore, the New York statute *specifically states* that the court must consider the contribution and expenditures of each spouse *to the career of the other spouse* when making a property distribution. *O'Brien* v. *O'Brien,* supra, 66 N.Y.2d 583. There is no concomitant directive in § 46b-81 (c), which requires only that courts consider various factors including "occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." Accordingly, we are not persuaded that we should follow New York's minority approach, which is based exclusively on its unique statute and the statute's illustrative legislative history. We conclude that the plaintiff's medical degree is not property subject to equitable distribution pursuant to § 46b-81 upon dissolution of the parties' marriage.

## II

The second issue raised by the defendant is whether, if it is assumed that the plaintiff's degree is not property subject to distribution pursuant to § 46b-81, the trial court abused its discretion by failing to take proper account of the plaintiff's degree in structuring a property settlement and in denying her alimony. The following additional facts are relevant to this issue. When this case was decided by the trial court, the plaintiff was thirty-six years of age with an annual gross income of $45,660 from his residency position. The defendant was

fifty-six years of age and employed part time as a registered nurse earning approximately $36,000 annually. She had earned approximately $67,000 in the previous year. The parties owned minimal assets, including their older automobiles,[8] approximately $5800 in cash, some collectibles, including rare books and stamps, and other miscellaneous personalty. After concluding that neither party was solely responsible for the irretrievable breakdown, the trial court ordered the dissolution of the marriage; denied alimony to either party; allowed each party to retain the personal property currently in that party's possession;[9] made the plaintiff solely responsible for a joint debt to the Internal Revenue Service, but otherwise made each party responsible for that party's own debts, which included the plaintiff's medical school loans amounting to approximately $40,000; ordered the plaintiff to pay the defendant $5800, which was the total amount of cash in the joint accounts of the parties at the time of the parties' separation and which the plaintiff unilaterally had withdrawn; and ordered both parties to be responsible for their own attorneys' fees.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court

[8] The plaintiff owned a 1985 Subaru GL-10 Wagon and the plaintiff and the defendant jointly owned a 1979 Chevrolet K-5 Blazer. The Blazer was in the defendant's possession, and the Subaru was in the plaintiff's possession.

[9] The defendant alleges that the plaintiff owns $70,000 to $80,000 worth of collectibles including rare books and a stamp collection. This is the valuation listed on the plaintiff's answers to interrogatories. There is no specific reference to this property in the memorandum of decision. The plaintiff admits that he owned these items, but alleged that the defendant retained these items for a time after their separation. The defendant returned some of the stamp collection during the trial, but a significant number of stamps were missing. The plaintiff maintained that he is no longer in possession of the rare books and believes that the defendant destroyed them. The defendant admits that she left the books outside the house when she left the house permanently. No subsequent valuation of the reduced stamp collection was entered at trial. We have no reason to believe, and the defendant points to none, that the trial court failed to take this into account in distributing the personalty, allowing each to keep that which was already in his or her possession.

orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case, such as demeanor and attitude of the parties at the hearing." (Citations omitted; internal quotation marks omitted.) *McPhee* v. *McPhee*, 186 Conn. 167, 177, 440 A.2d 274 (1982); see also *Rostain* v. *Rostain*, 213 Conn. 686, 693, 569 A.2d 1126 (1990). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Sands* v. *Sands*, 188 Conn. ·98, 101, 448 A.2d 822 (1982), cert. denied, 459 U.S. 1148, 103 S. Ct. 792, 74 L. Ed. 2d 997 (1983). Accordingly, "it is only in rare instances that the trial court's decision will be disturbed." Id.; accord *Tutalo* v. *Tutalo*, 187 Conn. 249, 252, 445 A.2d 598 (1982); *McPhee* v. *McPhee*, supra, 177. Our statutory scheme, specifically §§ 46b-81 and 46b-82,[10] "set[s] forth the criteria that a trial court must consider when resolving property and alimony disputes in a dissolution of marriage action. The court must consider *all* of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding as to each statutory factor. A ritualistic rendition of each and every statutory element would serve no useful purpose. . . . [T]he trial court is free to weigh the relevant statutory criteria without having to detail what importance it has assigned to the various statutory factors." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Caffe* v. *Caffe*, 240 Conn. 79, 82–83, 689 A.2d 468 (1997). With this standard in mind, we turn to the defendant's claims.

[10] Although § 46b-84, governing child support considerations in making property settlements and alimony awards, is usually also relevant, it is inapplicable in this case because the parties had no children of the marriage.

## A

The defendant first argues that the trial court abused its discretion in distributing the property between the parties. She maintains in her brief that "[t]he court awarded the plaintiff-appellee the degree and subsequent training and left the defendant-appellant with $5800." Additionally, she argues that the court failed to take account of the plaintiff's collectibles, which she claims are worth between $70,000 and $80,000. Neither of the defendant's arguments is persuasive. "It is often the case that the appellant, in arguing abuse of discretion, would in reality have this court vary either the weight placed upon specific statutory criteria or the weight placed upon documentary or testimonial evidence. *Fucci* v. *Fucci*, 179 Conn. 174, 183, 425 A.2d 592 (1979). Such an excursion by this court into the domain of the trier is unacceptable. *Schaffer* v. *Schaffer*, 187 Conn. 224, 227, 445 A.2d 589 (1982)." *Carpenter* v. *Carpenter*, 188 Conn. 736, 741–42, 453 A.2d 1151 (1982).

Section 46b-81 (c) directs that, "[i]n fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider *the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.* The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." (Emphasis added.) The trial court's comprehensive memorandum of decision demonstrates that it evaluated all of the statutory factors in making its decision concerning the property distribution. It acknowledged the need to consider the "vocational skills and employability of the parties" and, " 'the opportunity of each [party] for future

acquisition of capital assets and income' and . . . 'the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' " We conclude that "the trial court made sufficient reference, [if] not in form [then] in substance, to the factors it considered so that an appellate court would have guidance as to whether the trial court's discretion was properly exercised." *Caffe* v. *Caffe*, supra, 240 Conn. 83.

The memorandum of decision reveals that the trial court did take account of the plaintiff's degree and the potential for enhanced earning capacity when it distributed property pursuant to § 46b-81. There appear to have been only four assets of any significance—$5800 in cash, two automobiles, and some collectibles, which included gifts to the plaintiff from his father. On the liabilities side of the ledger were two significant debts—the plaintiff's $40,000 in education loans and a debt to the Internal Revenue Service. The plaintiff was ordered to assume both of those debts. The plaintiff also was ordered to pay over the full amount of the parties' cash assets to the defendant. Each was allowed to keep his or her own automobile and any other miscellaneous personalty already within his or her possession.

With respect to the collectibles, it appears that a substantial portion of their value was either destroyed or retained by the defendant after the plaintiff had left the marital home and that the defendant returned only a portion of the stamps to the plaintiff. In allowing each party to keep the personalty already within his or her possession, the court accounted for and distributed the collectibles. In light of the defendant's possible misconduct with respect to these collectibles, which the trial court reasonably could have found, we cannot say that such a distribution was inequitable or an abuse of discretion. The purpose of a distribution of property upon dissolution of the marriage is to "giv[e] each spouse

what is *equitably* his [or hers]." (Emphasis added.) *McPhee* v. *McPhee*, supra, 186 Conn. 170. Of the assets that did exist at the time of trial, all that were liquid went to the defendant and all the debt went to the plaintiff. We cannot say that this distribution is inequitable.

The defendant's attempt to obfuscate this issue by claiming that the plaintiff was awarded the value of the degree is unavailing. As resolved under our consideration of the first issue, the court properly made no distribution of the value of the medical degree because it is not property. The degree, however, was taken into account in the distribution of what property the parties currently did possess. Accordingly, we find no abuse of discretion in the trial court's distribution of the property of the parties pursuant to § 46b-81.

B

We do, however, find merit in the defendant's second claim, that the trial court abused its discretion in failing to award her alimony. An award of alimony is governed by § 46b-82,[11] which mandates that the court "shall consider the length of the marriage, the causes for the

---

[11] General Statutes § 46b-82 provides: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

annulment, dissolution of the marriage or legal separation, *the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . .*" (Emphasis added.) We continue mindful of the substantial deference that this court affords the decisions of the trial court in a dissolution case. See, e.g., *Caffe* v. *Caffe*, supra, 240 Conn. 82–83. We consider this case, however, to present one of those rare situations in which we must conclude that there was an abuse of that discretion. See *Sands* v. *Sands*, supra, 188 Conn. 100; *McPhee* v. *McPhee*, supra, 186 Conn. 177.

The trial court, in its memorandum of decision, acknowledged the need to consider the plaintiff's medical degree in determining an award of alimony. Further, the court specifically referred to the statutory factors related to the earning capacity of both parties as well as other economic factors in making that determination. It went on, however, to conclude that "consideration of the statutory factors in this case [does] not justify the award of alimony to the defendant." In support of its conclusion, the court analyzed the facts, noting that "[t]he defendant provided no direct financial contributions to the plaintiff's attainment of his medical degree. He paid for his own education costs and incurred large medical school loans, of which approximately $40,000 remains outstanding. The defendant also did not forgo educational and career opportunities in order to support her husband. Much to her credit, she was able to further her education and attain her career goal of becoming a licensed nurse during the marriage. She is presently employed as a nurse and is able to financially support herself at a standard of living to which she was accustomed during marriage.

"The economic condition in which a divorce decree leaves the parties is a paramount concern for the court

in a dissolution proceeding. A severing of the marriage bond in this case will not result in just one party facing a rewarding professional future. Both parties will remain able to support themselves and able to pursue their chosen career[s]." We have three problems with respect to the trial court's analysis.

First, we find no reference to the age of the defendant. This court does not mandate that any one factor should be given greater weight than other factors, nor do we require that the court recite every factor in its memorandum of decision. *Caffe* v. *Caffe*, supra, 240 Conn. 83. We believe, however, that this particular omission is significant in light of the substantial age disparity between the parties. The defendant was fifty-six years of age at the time of trial, while the plaintiff was thirty-six years of age. Although the defendant may be able to continue to pursue her chosen career, she is significantly limited in the duration of that career because of her age. Moreover, she currently has no significant assets and she is not likely to accumulate any prior to her retirement. Any savings she might have garnered in anticipation of her retirement were necessarily consumed during the years of the plaintiff's medical education because she was the sole support of the family unit. It is not unlikely or unreasonable to believe that the plaintiff's medical degree was the defendant's retirement plan.

We also take exception to the trial court's emphasis of the fact that the defendant did not contribute direct financial aid to the cost of the plaintiff's schooling. The absence of direct financial contribution is of little consequence in an award of alimony in these circumstances. The defendant provided emotional support and homemaker services during the years of the plaintiff's medical education. Moreover, she was the primary financial support of the family unit and forsook earnings by her spouse during his years in medical school in

anticipation of the future enhanced earning capacity of the family. Just prior to the time when she reasonably might have anticipated a return on her sacrifice, the breakdown of the marriage effectively prevented her from realizing anything for her efforts.

Finally, we are concerned by the trial court's reference to the defendant's ability to sustain herself at a level to which she had become accustomed during the marriage. While an absence of need may be a customary criterion for determining the propriety of an award of alimony, this is an atypical case. "Need is to be satisfied if it can be, but those cases and the authorities on which [this rule] rest[s] are not to be read as necessarily limiting alimony by the dependent spouse's need." *Rosenberg* v. *Rosenberg*, 33 Mass. App. 903, 904, 595 N.E.2d 792 (1992). The only reason the defendant was accustomed to a standard of living commensurate with her salary alone is that she had become the sole support of the family unit in order to allow the plaintiff an opportunity to attain his medical degree. In view of the foregoing factors, we conclude that the trial court abused its discretion by not awarding the defendant some alimony, thereby depriving her of any opportunity for future support.

In concluding that the trial court abused its discretion by failing to award the defendant any alimony, we are guided by the analysis of the Wisconsin Supreme Court in *Haugan* v. *Haugan*, supra, 117 Wis. 2d 215–23. In *Haugan*, the court faced the typical working spouse/ student spouse situation and concluded that it was an abuse of discretion to deny alimony to the working spouse. The court determined that notions of fairness demand that the working wife be compensated for her lost expectation of the enjoyment of her husband's enhanced future earnings in light of her contributions to his education, particularly in view of the fact that there was inadequate property to distribute. Id., 207.

The court concluded that it was an abuse of discretion to deny alimony because of a lack of need, that the trial court failed to provide an adequate articulation of its reason for the denial, and that the award was clearly inadequate under the circumstances. Id., 216. We are persuaded by this rationale and conclude, for the same reasons, that the trial court abused its discretion in denying alimony to the defendant.

In concluding that alimony is a proper means of sharing the future earning of a spouse's advanced degree, we are supported by the conclusions of courts interpreting statutes similar to ours. Particularly, the Massachusetts[12] and Rhode Island[13] statutes use language parallel

---

[12] Massachusetts General Laws c. 208, § 34 provides in relevant part: "Upon divorce . . . the court of the commonwealth . . . may make a judgment for either of the parties to pay alimony to the other. In addition or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other. . . . In determining the amount of alimony, if any, to be paid, or in fixing the nature and value of the property, if any, to be so assigned, the court . . . *shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . . The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates* and the contributions of each of the parties as a homemaker to the family unit." (Emphasis added.) Compare General Statutes § 46b-81 (c) as set forth in footnote 1 of this opinion.

[13] Rhode Island General Laws § 15-5-16.1 (1956, 1988 Reenactment) provides in relevant part: "In addition to or in lieu of an order to pay alimony made pursuant to a complaint for divorce, the court may assign to either the husband or wife a portion of the estate of the other. In determining the nature and value of the property, if any, to be assigned, the court . . . *shall consider the length of the marriage, the conduct of the parties during the marriage, and the contribution of each of the parties in the acquisition, preservation, or appreciation in value of their respective estates,* and the contribution and services of either party as a homemaker." (Emphasis added.)

This statute was amended in 1992 by 1992 Rhode Island Public Laws , c. 269, § 2, to include a provision for the courts to consider "[t]he contribution by one (1) party to the education, training, licensure, business, or, increased earning power of the other" when making property distributions. This direc-

to that of §§ 46b-81 and 46b-82. The courts of both states have concluded that their respective statutes do not permit equitable distribution of an advanced degree as property, but that alimony is the proper means of compensating the working spouse. *Drapek* v. *Drapek*, 399 Mass. 240, 246–47, 503 N.E.2d 946 (1987); *Becker* v. *Perkins-Becker*, 669 A.2d 524, 531–32 (R.I. 1996). In *Drapek*, the Massachusetts Supreme Judicial Court concluded that distribution of a degree as property would be improper in that it would not take into account the possibility of future events because property settlements are not subject to future modification.[14] *Drapek* v. *Drapek*, supra, 244. The court went on to conclude that in such circumstances, it is more appropriate to employ an award of alimony to account for the enhanced earning capacity engendered by an advanced degree. Id., 245-46. The Rhode Island Supreme Court, in *Becker* v. *Perkins-Becker*, supra, 531–32, adopted the rationale of *Drapek*.

The conclusions of both the Massachusetts and Rhode Island courts that the unmodifiable nature of a property settlement sometimes makes it an inappropriate method for sharing the wealth generated by the student spouse's increased earning capacity is persuasive. The further conclusions of those courts that alimony is an appropriate vehicle by which to compensate the working spouse when there is inadequate property to distribute is equally compelling. We previously have concluded that "property distributions, unlike alimony awards, *cannot* be modified to alleviate hardships that may result from enforcement of the original dissolution decree in the face of changes in the situation of either

tive was not part of the statute considered by the court in *Becker* v. *Perkins-Becker*, 669 A.2d 524, 530 n.4 (R.I. 1996).

[14] The court initially concluded that the degree was not property subject to equitable distribution because it represents future earned income, the value of which is too speculative and subject to too many variables. *Drapek* v. *Drapek*, supra, 399 Mass. 244.

party. See *Connolly* v. *Connolly*, [191 Conn. 468, 477, 464 A.2d 837 (1983)]; H. Clark, [Domestic Relations in the United States (1968)] § 14.8, p. 449, and § 14.9, p. 453." (Emphasis added.) *Rubin* v. *Rubin*, supra, 204 Conn. 232; see also General Statutes § 46b-86.[15] An alimony award, on the other hand, is an appropriate method to take into account future earning capacity because it can be modified whenever there is a change in the circumstances of the parties that justifies the modification. *Bartlett* v. *Bartlett*, 220 Conn. 372, 381, 599 A.2d 14 (1991);[16] *Rubin* v. *Rubin*, supra, 235–36; see General Statutes § 46b-86.

Sound public policy militates in favor of using an alimony award rather than a property settlement in these circumstances. To conclude that the plaintiff's medical degree is property and to distribute it to the defendant as such would, in effect, sentence the plaintiff to a life of involuntary servitude in order to achieve the financial value that has been attributed to his degree. The plaintiff may become disabled, die or fail his medical boards and be precluded from the practice of medicine. He may chose an alternative career either within medicine or in an unrelated field or a career as a medical missionary, earning only a subsistence income. An award of alimony will allow the court to consider these changes if and when they occur.

Because this case represents our first foray into this particular aspect of marriage dissolutions, we take this

[15] General Statutes § 46b-86 authorizes modification of alimony and child support payments "upon a showing of a substantial change in circumstances of either party . . . ." It provides in relevant part: "This section shall not apply to assignments under § 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. . . ."

[16] In *Bartlett* v. *Bartlett*, supra, 220 Conn. 381, we concluded that an inheritance, once vested in the heir upon death of the donor, constitutes changed circumstances and is properly considered in a request to modify alimony, notwithstanding the fact that the property was still pending probate and, thus, had not yet been distributed.

opportunity to clarify certain questions that may arise in interpreting the scope of this decision. First, we caution that we have not established a blanket rule that alimony must always be awarded to the working spouse.[17] Nor do we conclude that enhanced earning capacity, and the contributions of the parties thereto, are necessarily factors of greater significance than other statutory factors. The trial courts continue to retain their traditional discretion in that regard. We do conclude, however, that a working spouse is normally entitled to some compensation for contributions made during the marriage and for the loss of enhanced future earnings, particularly when there are inadequate assets to distribute. The absence of need or direct financial contribution to a spouse's education are not sufficient bases upon which to deny alimony when it is the only equitable compensation available to the working spouse.

Additionally, we are mindful that in ordering alimony or a property distribution in cases where there is an advanced degree obtained with the aid of a working spouse, the trial court also must take into account factors relating to the student spouse. The court must recognize the fact that the student spouse has worked and studied hard to obtain the degree and will have to continue to work hard in the future to realize the earning potential attributable to the degree. *Haugan* v. *Haugan*, supra, 117 Wis. 2d 215. "Granting equity to the supporting spouse should not result in inequity to the student spouse." Id.

Finally, we recognize that a nominal alimony award may often be appropriate when the present circumstances will not support a substantial award. Nominal

---

[17] We also note that our analysis and conclusion are limited to the circumstances presented in this case and should not be expanded beyond the context of the working spouse/student spouse paradigm. In future similar cases, if the trial court concludes that alimony is inappropriate, it should clearly set forth its reasoning. See *Haugan* v. *Haugan*, supra, 117 Wis. 2d 215.

awards, however, are all that are necessary to afford the court continuing jurisdiction to make appropriate modifications. We have stated that "because some alimony was awarded, [one dollar per year] with no preclusion of modification, if the circumstances warrant, a change in the award can be obtained at some future date." *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 543, 429 A.2d 801 (1980); see also General Statutes § 46b-86; *Ridolfi* v. *Ridolfi*, 178 Conn. 377, 379–80, 423 A.2d 85 (1979). Concededly, in this case, no significant alimony appears to have been warranted at the time of trial. This was particularly true because, at the time of dissolution, the defendant's salary was roughly equal to that of the plaintiff and, with further effort, could have been increased significantly. The failure to award any alimony at the time of trial, however, permanently precluded the defendant from seeking alimony at a future date should those circumstances change.[18]

### III

The final issue presented for our consideration is the existence of an implied in fact contract between the parties with respect to the plaintiff's medical degree. There are two subparts to this issue articulated by the defendant. First, she asks *this court* to find that a contract did exist between the parties, and, second, she

[18] We are also mindful of our prior holdings recognizing that " '[t]he rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other.' " *Sunbury* v. *Sunbury*, 210 Conn. 170, 175, 553 A.2d 612 (1989). In light of that truism, we concluded in *Sunbury* that "[t]o limit the remand in this case to the issue of periodic alimony would impede the trial court's ability to weigh the statutory criteria for financial orders to achieve an equitable result [because t]he issues involving financial orders are entirely interwoven." Id., 174–75. Accordingly, notwithstanding our conclusion that the property distribution pursuant to § 46b-81 was fair and within the discretion of the trial court, it is necessary on remand for the trial court to reevaluate its prior order distributing the marital property in light of our conclusion that an award of alimony should be granted. This case presents unique circumstances and we leave the decision whether to alter the prior property distribution to the sound discretion of the trial court.

asks us to conclude that the trial court improperly failed to enforce that contract. Because these issues were not properly raised in the trial court, we decline to address them.

The existence of a contract is, at least initially, a question of fact; *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 922, 625 A.2d 823 (1993); particularly with respect to the existence of an implied in fact contract as alleged here. *Bolmer* v. *Kocet*, 6 Conn. App. 595, 609, 507 A.2d 129 (1986). "It is the function of the trial court, not this court, to find facts." *State* v. *Lefferty*, 189 Conn. 360, 363, 456 A.2d 272 (1983). Since a contractual claim was not properly raised at trial, it is not reviewable by this court. "[T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 741, 631 A.2d 288 (1993). "We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 792, 621 A.2d 267 (1993).

The defendant contends that this issue was raised at trial because her attorney cited *Boland* v. *Catalano*, 202 Conn. 333, 521 A.2d 142 (1987) (unmarried, cohabiting couple may be found to have an implied contractual agreement regarding property distribution), in closing argument.[19] Reference to *Boland* appears to have been made, however, solely for comparative purposes. It was

---

[19] The relevant portion of the defendant's summation is as follows: "I would suggest to the Court that the Court can recognize that this degree, this medical degree, has a current value. That he also has a current earning

an effort to highlight the inequity of the situation between the paucity of what the defendant would take from the marriage compared to the substantial benefits that the plaintiff would take from the marriage if his medical degree was not to be considered property available for distribution. At no point did the defendant suggest that the rationale of *Boland*, i.e., the existence of an implied contract, was applicable in this case. Furthermore, a claim sounding in contract was neither pleaded nor proved.[20] Such a passing reference to *Boland*, without any analysis or explanation of its applicability to this case does not constitute sufficient raising of an issue at trial to warrant review by this court. See, e.g., *Sicaras* v. *Hartford*, 44 Conn. App. 771, 783–84, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997).

The judgment is reversed in part and the case is remanded to the trial court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

---

capacity higher than what he's doing, if he chooses to exercise it, and we are not asking him to exercise it. I will, however, ask the Court to recognize that this marriage was a partnership, and I refer the Court to the case *Boland* [v.] *Catalano*, which is a Connecticut case. That case was not a marriage case. That case was a case where two parties lived together, and everything ended up in the fellow's name and nothing ended up in the lady's name. And it was their game plan that they live as husband and wife, acted as husband and wife, and were planning their future. Well, I think we have a bit of a parallel here. We have a Doctor with a medical degree. . . . [H]e is getting the benefit of her income and education [in the form of reduced requests for alimony]. He, on the other hand, if allowed to walk out and never look back, she worked those three jobs while he was in medical school."

[20] Although there was some testimony by both parties that there was an understanding between them, particularly the plaintiff's acknowledgment that the defendant could "take it easy" after the plaintiff obtained his degree, this is hardly adequate proof of an implied contract, especially when such a legal theory was never placed before the court. The plaintiff refused to characterize this as an agreement, but rather thought that it might be viewed as a "plan."